**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ray C. BROCE and Broce Construction Company, Inc., Defendants-Appellants.**

Nos. 83–2558, 83–2559.

United States Court of Appeals, Tenth Circuit.

Jan. 2, 1986.

---

Glenn E. Casebeer, II (Curt T. Schneider on the briefs) Schneider, and Casebeer, Coffeyville, Kan., for defendants-appellants.

John P. Fonte, Dept. of Justice, Washington, D.C. (John J. Powers, III, Dept. of Justice, J. Paul McGrath, Asst. Atty. Gen., and Charles F. Rule, Deputy Asst. Atty. Gen., Washington, D.C., and Judy Whalley and Mary Jones, Dept. of Justice, Chicago, Ill., with him on brief) for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and DOYLE, BARRETT, McKAY, LOGAN, SEYMOUR, and MOORE, Circuit Judges.

## ON REHEARING EN BANC

JOHN P. MOORE, Circuit Judge.

These cases are before the court for rehearing *en banc*. The questions presented are whether a plea of guilty constitutes a waiver of a defendant's right to assert a violation of the Double Jeopardy Clause of the Fifth Amendment and whether the second of two indictments charging a Sherman Act conspiracy is duplicitous of the first. We hold that a guilty plea does not waive the defense of double jeopardy under the circumstances of this case. We further hold the record requires a remand of this case for a hearing to determine as a matter of fact whether the acts charged constitute one or two conspiracies. We therefore reverse the judgment of the district court.

On November 7, 1981, a two count indictment was returned charging defendants, Ray C. Broce and Broce Construction Co., Inc., with conspiracy to violate the Sherman Act, 15 U.S.C. § 1. In the second count, Mr. Broce was charged with mail fraud, 18 U.S.C. § 1341. On February 4, 1982, a second indictment was returned

charging Mr. Broce and the corporation in one count with violation of 15 U.S.C. § 1.

On February 8, 1982, pursuant to a plea agreement between the government and the two defendants, Mr. Broce appeared and entered pleas of guilty to both indictments in his own behalf and as president of the corporation. Subsequently, Broce was sentenced to concurrent two-year terms and fined $50,000 on the conspiracy counts of both indictments. The corporation was fined $750,000 on each indictment.

One year later, both defendants filed motions pursuant to Fed.R.Crim.P. 35(a) to vacate the judgments alleging their conviction on the second indictment violated the Double Jeopardy Clause of the Fifth Amendment. The defendants asserted the conspiracy counts charged a single transaction rather than two separate conspiracies; hence, the second charge was unconstitutionally duplicitous and void. This contention was motivated by a ruling from another judge in the same district dismissing an indictment in a companion case.

The defendants, Broce and the Broce Construction Company, were actively engaged in the highway construction business in the state of Kansas for a number of years prior to the indictments. Indeed, these indictments grew out of that very activity, as did the indictment in the companion case, *United States v. Beachner Construction Co., Inc.*, 555 F.Supp. 1273 (D.Kan.1983). In *Beachner*, as here, the defendants had been indicted on a charge of conspiracy to rig bids on a particular Kansas highway project. After trial and acquittal on this charge, the defendants were again indicted on a second conspiracy charge connected to a different highway project. *Id.* at 1274. Prior to trial, the defendants moved to dismiss the indictment on double jeopardy grounds. After a three-day evidentiary hearing pursuant to *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the trial court concluded there had been a pervasive conspiracy to rig bids in the Kansas highway construction industry that had existed for "in excess of twenty-five years."

*Beachner, supra,* at 1277. Accordingly, the court dismissed the indictment and the government appealed. The ruling was affirmed by this court. *United States v. Beachner Construction Co., Inc.*, 729 F.2d 1278 (10th Cir.1984).

The hearing from which the present appeal emanates occurred after the *Beachner* appeal but before our affirmance of the dismissal. In order to focus the issues in this case, Broce and the government stipulated that the record of the *Beachner* hearing could be considered by the trial court in ruling on appellants' Rule 35 motion. That record is also before us. Following the hearing, and before the publication of our opinion in *Beachner*, the trial court denied relief, holding as a matter of law, the defendants had waived their right to raise the double jeopardy issue by their guilty pleas. This appeal followed.

The panel which originally heard this case ordered reversal of the trial court's judgment. *United States v. Broce*, 753 F.2d 811 (10th Cir.1985). That opinion was vacated and rehearing was granted to consider whether the guilty pleas are admissions by the defendants that there were actually two conspiracies and whether the defendants could collaterally attack the foundations of an indictment following a plea of guilty.

## I.

The government contends a fundamental principle in this circuit is that the double jeopardy defense is personal and subject to waiver. *Cox v. Crouse*, 376 F.2d 824 (10th Cir.), *cert. denied*, 389 U.S. 865, 88 S.Ct. 128, 19 L.Ed.2d 136 (1967); *Caballero v. Hudspeth*, 114 F.2d 545 (10th Cir.1940). On that premise the government argues that an unconditional plea of guilty constitutes that waiver, *Caballero, supra*, and precludes a challenge of the indictment. Although the panel held that *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), compel a reversal of *Caballero*, the government takes issue with this re-

sult. The government further postulates allowing a collateral attack will encourage defendants to challenge their sentences "long after their guilty pleas are entered, thus undermining the finality of convictions and increasing the already heavy workload of the federal courts."

These contentions were considered and rejected in *Blackledge, supra.*[1] There, in response to an argument that a due process claim could not be asserted following a guilty plea, the Supreme Court stated when the claim of constitutionality goes to "the very power of the State to bring the defendant into court to answer the charge," a guilty plea does not waive the constitutional issue. *Blackledge*, 417 U.S. at 30, 94 S.Ct. at 2103.

The essential right with which the court dealt in *Blackledge* and with which we are concerned here is the "right not to be haled into court at all." *Blackledge*, 417 U.S. at 30, 94 S.Ct. at 2104. Indeed, as the court noted in *Robinson v. Neil:*

> The guarantee against double jeopardy is significantly different.... While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result *is to prevent a trial from taking place at all....*

409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973) (emphasis added).

█ This is the first occasion we have had to reconsider the nature of the double jeopardy right and its effect on a guilty

plea since *Blackledge* and *Menna.*[2] The present opportunity convinces us our previous holding in *Caballero* is no longer apposite. As already noted in *Menna, supra,* and *Robinson, supra,* the Fifth Amendment's Double Jeopardy Clause stands as an inhibition upon the government's right to institute charges. This inhibition is absolute, and even though the bar works as a protection of individuals, it does not constitute an individual right which is subject to waiver. If the absence of constitutional authority prevents the government from instituting charges in the first instance, a defendant's guilty plea cannot confer authority upon the government to do what the Constitution prohibits. In light of this fundamental constitutional concept, the doctrine of waiver has no significance.[3]

█ Hence, the Broce guilty pleas do not constitute a bar to questioning whether the Double Jeopardy Clause prohibits the institution of the second indictment and vitiates those very pleas. It also follows that if the institution of the charge under attack is constitutionally defective, it is not a significant concern that collateral attack affects the finality of the judgment. If the charge upon which the judgment is based is constitutionally infirm, either on due process or double jeopardy grounds, that judgment cannot be "final." *Cf. Haring v. Prosise,* 461 U.S. 954, 103 S.Ct. 2424, 77 L.Ed.2d 1313 (1983).

1. The government seeks to avoid the implication of *Blackledge* with the argument *Blackledge* is a due process and not a double jeopardy case. While that statement is true, it does not negate the clear impact the case has upon collateral attack following guilty pleas. This impact is the same whether the complaint is grounded in due process or double jeopardy when the right asserted goes to the government's power to file charges. *Blackledge, supra.*

2. The question was raised but not dealt with in *Bromley v. Crisp,* 561 F.2d 1351 (10th Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978).

3. The government argues our holding in *United States v. Rich,* 589 F.2d 1025 (10th Cir.1978) decided after *Blackledge* and *Menna* indicates our adherence to the concept of waiver despite the assertion of a constitutional defect. The

government urges the panel ignored the established law in the circuit. That argument is based upon an overbroad reading of *Rich,* for that case did not deal with the Double Jeopardy Clause in the context presented here. Additionally, the pre-*Blackledge* cases from this circuit relied upon by the government are equally inapposite. *See Bracey v. Zerbst,* 93 F.2d 8 (10th Cir.1937); *Cox v. Crouse,* 376 F.2d 824 (10th Cir.), *cert. denied,* 389 U.S. 865, 88 S.Ct. 128, 19 L.Ed.2d 136 (1967). The government also cites *United States v. Bascaro,* 742 F.2d 1335 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985), as a "waiver" case. Examination shows, however, the "waiver" was a failure to preserve the issue for appeal by failing to raise it in the trial court. The reliance is misplaced.

The government argues that "almost every other court of appeals that has considered the issue [of waiver] since *Blackledge* and *Menna* has held that double jeopardy is a personal defense that is waived by a guilty plea where, as here, the plea is the result of a plea bargain." This argument is not well-founded. Examination of the cases cited in support of the government's proposition discloses neither *Blackledge* nor *Menna* were considered. *See United States v. Solomon,* 726 F.2d 677 (11th Cir.1984); *United States v. Herzog,* 644 F.2d 713 (8th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *Brown v. State,* 618 F.2d 1057 (4th Cir.), *cert. denied, sub nom. Brown v. Maryland,* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980); and *United States v. Perez,* 565 F.2d 1227 (2d Cir.1977).

In addition, the government suggests allowing the defendants to challenge their pleas is both inconsistent and inequitable. In reliance upon *Kerrigan v. United States,* 644 F.2d 47 (1st Cir.1981), the government argues a defendant who pled guilty cannot be permitted to make arguments "inconsistent with the factual and theoretical foundations of the indictment." On this premise, the government contends *Kerrigan* supports the government's waiver theory. Yet, in discussing the issue of the defendant's waiver, the *Kerrigan* court did not consider *Blackledge* or its effect on the issue. Since *Blackledge* is the keystone in the issue of waiver under consideration here, *Kerrigan* cannot be regarded as persuasive authority.[4] Accordingly, the cardinal principle that the government's authority to charge is not subject to waiver by the accused has not been undercut since *Blackledge* and must remain the principle by which we are guided here.

■ Contrary to the government's insistence upon equity, the defendants' plea bargain cannot work an estoppel of their right to assert the invalidity of the charge. When the government enters into an agreement which is fashioned upon a constitutionally infirm charge, it cannot be heard to claim equity prohibits the defendants from raising the fundamental infirmity of the charging power. The government argues that because adherence to the plea agreement required it to forsake the possibility of instituting additional conspiracy charges in another district, it would be unfair to allow the defendants to obtain the benefits of the plea bargain and avoid the detriments. This argument overlooks that the government was without power to institute one of the charges upon which the plea agreement was based. In effect, that agreement was partially founded upon a nullity. As a matter of immutable principle, the government's constitutional inability to charge in the first instance is not diminished simply because it bargained away a prosecutorial advantage. The fundamental right not to be haled into court cannot be compromised on such grounds.

The government has also argued the defendants' pleas of guilty must be considered admissions of all the facts alleged in the indictments; therefore, they cannot contest the validity of the second charge. The prosecution contends that the indictments effectively alleged the existence of two conspiracies; therefore, having admitted that allegation by their pleas of guilty, the defendants cannot be heard to contend there was only one conspiracy in fact. *United States v. Kerrigan, supra.* The argument is unpersuasive. First, as distinguished from *Kerrigan,* the present indictments did not specifically allege separate conspiracies. While the second indictment alleged a conspiracy to rig bids on particular highway projects, it contained no specific charge that the conspiracy itself was separate from the conspiracy alleged in the first indictment. Second, the admissions of factual guilt subsumed in the pleas of guilty go only to the acts constituting the conspiracy and not to whether one or more conspiracies existed. *Launius v. United States,* 575 F.2d 770 (9th Cir.1978).

4. Moreover, careful reading discloses the *Kerrigan* district court did not rule on the question of waiver; hence, the discussion of that topic by the circuit court is dictum.

■ Accordingly, we now hold, as mandated by *Menna*, a defendant's plea of guilty to a constitutionally duplicitous charge is not a waiver of that defendant's right to assert a double jeopardy claim. While there have been many cases which have held to the contrary, none of those have dealt with what *Blackledge* has characterized as the right not to be haled into court and what we recognize as the government's lack of constitutional power to charge. We find ourselves aligned with the Ninth Circuit in *Launius* and give full cognizance to the true nature of the double jeopardy right.[5]

## II.

■ The remaining question is whether the indictments to which the defendants pled charged one or two Sherman Act conspiracies. As in *Beachner, supra,* a detailed paragraph by paragraph comparison of the two Broce indictments reveals their virtual identity except for references to different Kansas highway projects. Thus, on their face the two indictments do not appear to charge different conspiracies.

As previously indicated, the parties stipulated in the trial court that the transcript from the evidentiary hearing on the double jeopardy issue in *Beachner* would be incorporated in the record in this case. Thus, our opinion in *Beachner* must have weight here. The government asserts our previous ruling has no bearing on this case because we merely held in *Beachner* the findings of the trial court were not clearly erroneous. The government also argues that the question of whether the charges were of single or multiple conspiracies must be resolved from the face of the indictments, and not from the underlying facts.

Whatever the approach taken in other cases in determining the nature of the charged conspiracy, the stipulation to include consideration of the *Beachner* transcript presents a unique case and permits inquiry behind the indictment. Having conceded the applicability of the facts devel-

oped in that hearing, the government is not in the position to argue our examination of the issue must be confined to the pleadings. Can that stipulation by the government be regarded as anything but a concession on its part that the facts of the two cases are so intertwined that one is relevant to the other in consideration of the same legal issue? We think not.

We now have before us a case which is factually linked to another in which we have already found testimony that established a "continuous, cooperative effort among Kansas asphalt contractors to rig bids" for "more than twenty-five years." *Beachner,* 729 F.2d at 1282. Moreover, that testimony established the existence of a "common method" of bid-rigging that was "well-known" and open among all the contractors. *Id.* We found evidence that "mutual and interdependent obligations were created between participating contractors" and that "the bid-rigging scheme was self-perpetuating in nature." *Id.* We then added: "The evidence showed that asphalt contractors in Kansas understood for over twenty-five years that the ability to rig bids was available using the aforementioned method. There was, therefore, no lack of conspiratorial agreement in this case." *Id.* at 1283.

When the two indictments are viewed in this factual matrix, a significant question arises whether, under the unique circumstances of this case, the defendants stood charged with participation in only one longstanding conspiracy. Moreover, on the face of the indictments, it appears the transactions set forth were mere elements in that conspiracy, and not independent conspiracies themselves. *Compare United States v. Behrens,* 689 F.2d 154 (10th Cir. 1982); *United States v. McMurray,* 680 F.2d 695 (10th Cir.1981); *United States v. Palermo,* 410 F.2d 468 (7th Cir.1969).

Notwithstanding, the question of whether the indictments charged one or two conspiracies is, in the context of this case, wholly factual. Despite the existence of

5. *See also United States v. Broussard,* 645 F.2d 504 (5th Cir.1981).

the *Beachner* record and our opinion in that case, the trial court has made no determination of those essential facts, and we are not wont to do so. While *Beachner* could logically be regarded as a significant signpost, our system requires the road to be first chosen by the trial court and not by us. In this instance, what must follow is a determination of the kind mandated in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and we must remand for that purpose. We are therefore returning this case for further proceedings at the point at which the trial court arrived at an erroneous conclusion.

We hold the defendants' plea of guilty is not a bar in this case to consideration of whether the charge contained in the second indictment is void because of the Double Jeopardy Clause of the Fifth Amendment. The judgment of the trial court denying the defendants' motion to vacate sentence in 83–2558 is reversed, and the case is remanded for a factual determination on only the evidence originally presented upon the filing of defendants' motions, including the stipulation between the parties. There being no error alleged in 83–2559, the appeal is dismissed.

McKAY, Circuit Judge, concurring:

I concur fully in part I of the majority's opinion. I join in part II of the majority opinion insofar as it remands to the trial court to give it the first opportunity to consider that issue. I do so reluctantly because I believe the matter is clear enough on the record before us to establish as a matter of law that the second indictment charging the defendant with violation of the Sherman Act in connection with a conspiracy to rig bids on another Kansas highway construction project violates the double jeopardy clause. I base this conclusion upon my agreement with this court's panel opinion in the instant case, authored by Judge Bohanon. *United States v. Broce,* 753 F.2d 811 (10th Cir.1985). In that opinion, this court stated:

Facts therefore now appearing in this record lead to the conclusion that the defendants have been twice punished for their participation in a single continuing conspiracy. Because their double jeopardy rights have been so violated, the judgment and sentence entered under the second indictment below were illegal and the defendants' Rule 35(a) motion must be granted.

Accordingly, the judgment and sentence entered by the district court on March 15, 1982 in case No. 83–2558 is hereby vacated.

*Id.* at 823.

My views are based, as were Judge Bohanon's, on the similarity between the two indictments with which the defendants were charged, along with the lack of specificity of those indictments. As Judge Bohanon aptly stated:

The indictments state approximate beginning dates for the conspiracies but give no conclusion dates, stating merely that they were "continuing." Nothing in the first indictment would preclude a finding that the conspiracy alleged therein was "continuing" throughout the period encompassed by the second indictment. The indictments do not even specify with definiteness who was involved in the alleged conspiracies. Nothing would preclude a finding that all of the people participating in the first alleged conspiracy were also participants in the second. And finally, as noted previously, there is nothing in the first indictment to indicate that the agreement and conspiracy described therein with regard to Project No. 23–60–RS–1080(9) did not also encompass other projects and and [sic] other bid-letting dates. Indeed, nothing in either indictment is definitely inconsistent with the view that the conspiracies they allege are in fact identical, and, further, are identical with the ongoing conspiracy to rig bids, extending over a period exceeding a quarter century....

*Id.* at 820.

The rationale behind my view that this court should vacate the judgment and sentence entered in Case No. 83–2558 can be

found in *Short v. United States,* 91 F.2d 614 (4th Cir.1937):

> Blanket charges of "continuing" conspiracy with named defendants and with "other persons to the grand jurors unknown" fulfill a useful purpose in the prosecution of a crime, but they must not be used in such a way as to contravene constitutional guarantees. If the government sees fit to send an indictment in this general form charging a continuing conspiracy for a period of time, it must do so with the understanding that upon conviction or acquittal further prosecution of that conspiracy during the period charged is barred, and that this result cannot be avoided by charging the conspiracy to have been formed in another district where overt acts in furtherance of it were committed, or by charging different overt acts as having been committed in furtherance of it, or by charging additional objects or the violation of additional statutes as within its purview, if in fact the second indictment involves substantially the same conspiracy as the first. And, if two indictments charging continuing conspiracy and covering the same period in whole or in part are drawn with blanket coverage "with other persons to the grand jurors unknown," a plea of former jeopardy should be submitted to the jury if there is proof that the same partnership in criminal purposes is prosecuted by both, even though the appearance of identity of offenses may have been avoided in the indictment by charging a different place of conspiracy, or by joining additional defendants, or by charging different overt acts, or by charging the violation of additional statutes as being among the objects of the conspiracy. The constitutional provision against double jeopardy is a matter of substance and may not be thus nullified by the mere forms of criminal pleading.

*Id.* at 624. I, along with Judge Bohanon, believe that "the government cannot be allowed to evade the Double Jeopardy Clause by using vague indictments, facially distinguishable only by their reference to different overt acts, here, the submission of rigged bids on different construction projects." *Broce,* 753 F.2d at 822. Accordingly, while I do not believe that this case needs to be resubmitted to the trial court for determinations of fact, I have no objection to joining in giving the trial court the first opportunity to review the issue. I therefore join in the judgment to remand.

SEYMOUR, Circuit Judge, concurring in part and dissenting in part.

This case presents a difficult problem concerning the Double Jeopardy Clause of the Fifth Amendment, which declares that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb...." I agree that defendants' guilty pleas did not forfeit their right to challenge the indictments on double jeopardy grounds. I must respectfully disagree, however, with the broad conclusion that the Double Jeopardy Clause embodies not "an individual right which is subject to waiver,"[1] but an "absolute inhibition" upon government. *See* Majority Op. at 795. Although alluring for its clarity in an area of law which is anything but clear, in my view such a rule conflicts with the Supreme Court's consistent approval of knowing and voluntary waivers of constitutional rights. I also disagree with the conclusion that this case must be remanded to determine whether the Double Jeopardy Clause was in fact violated. I would hold that it has been and would vacate the second Sherman Act conspiracy conviction and sentence.

The notion of waiver embodies the aspiration that individuals should be entitled to decide for themselves whether to invoke constitutional protections. As the Supreme

---

**1.** For purposes of consistent analysis, forfeiture may be defined as the loss of a constitutional defense through the operation of law and without regard for a defendant's intentions. In contrast, waiver connotes an informed, deliberate, and uncoerced decision to relinquish such a defense. *See* Westen, *Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich.L.Rev. 1214 (1977).

Court stated in *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279–80, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942):

> "[T]he procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters....
>
> "... When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards ... is to imprison [him] ... in his privileges and call it the Constitution."

The Court has thus consistently allowed criminal defendants to relinquish constitutional rights. *See, e.g., Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) (freedom from self-incrimination); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (speedy trial); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (trial of any kind); *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (confrontation of witnesses); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (claims otherwise reviewable via habeas corpus); *Adams*, 317 U.S. 269, 63 S.Ct. 236 (counsel and jury trial). To be sure, the waiver of any such right must be knowing and voluntary, and courts should " 'indulge every reasonable presumption against waiver....' " *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (citations omitted); *see also* Tigar, *The Supreme Court, 1969 Term, Forward: Waiver of Constitutional Rights: Disquiet in the Citadel*, 84 Harv.L.Rev. 1 (1970). When these conditions are properly fulfilled, the relinquishment of constitutional rights is permissible.

The Court has countenanced no exception for the Double Jeopardy Clause. In the seminal case of *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), the Court characterized freedom from double jeopardy as a right which may not be denied a defendant " 'without his consent.' " *Id.* at 131, 24 S.Ct. at 805 (quoting 1 Bishop, Criminal Law § 1026 (5th ed.)). In *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Court described the right in ostensibly personal terms:

> · "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense....
>
> "... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possiblity that even though innocent he may be found guilty."

*Id.* at 187–88, 78 S.Ct. at 223.[2] The Court then held that the right had not been waived in the circumstances of that case:

> "Nevertheless the Government contends that Green 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a *successful* appeal of his improper conviction of second degreee murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. Cf. *Johnson v. Zerbst*, 304 U.S. 458 [58 S.Ct. 1019]."

*Id.* at 191, 78 S.Ct. at 225 (emphasis in original). In *Schneckloth v. Bustamonte*, 412 U.S. 218, 237–38, 93 S.Ct. 2041, 2052–

---

2. *See also Robinson v. Neil*, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973) (describing guarantee against double jeopardy as "a constitutional right of the criminal defendant").

53, 36 L.Ed.2d 854 (1973), the Court listed "the right to be free from twice being placed in jeopardy" as one of those rights to which the *Zerbst* standard of knowing and intelligent waiver had been applied, specifically citing *Green.*

The subsequent cases of *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam), in no way mark a retrenchment from the Court's waiver jurisprudence or its conception of the Double Jeopardy Clause. *Blackledge* and *Menna* characterize the right in "jurisdictional" terms in order to delimit the circumstances under which a valid forfeiture—not waiver—may occur. Both cases hold that a mere guilty plea does not forfeit an unambiguous claim that the prosecution lacked all power to hale a defendant into court.[3] As explained in *Menna:*

"Neither *Tollett v. Henderson,* 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), nor our earlier cases on which it relied, *e.g., Brady v. United States,* 397 U.S. 742 [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970), and *McMann v. Richardson,* 397 U.S. 759 [90 S.Ct. 1441, 25 L.Ed.2d 763] (1970), stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations.... *[I]n Tollett we emphasized that waiver was not the basic ingredient of this line of cases,* 411 U.S. at 266 [93 S.Ct. at 266]. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. *A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established.* Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim."

423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2 (emphasis added); *see also Haring v. Prosise,* 462 U.S. 306, 319–21, 103 S.Ct. 2368, 2376–77, 76 L.Ed.2d 595 (1983).[4] *Blackledge* and *Menna* recall *Green:* the nature of the guarantee against double jeopardy restricts what may qualify as a valid forfeiture, but does not negate the possibility of a deliberate waiver. The *Menna* Court thus explicitly declined to rule that a double jeopardy claim may never be waived. *See* 423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2.

Characterizing a right in jurisdictional terms simply does not make it any less personal or necessarily immune from waiver. In *Johnson v. Zerbst,* the Court identified the right to counsel as a "jurisdictional prerequisite" to the commencement of criminal proceedings:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, *compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence.* If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction

---

**3.** I would overrule *Caballero v. Hudspeth,* 114 F.2d 545, 547–48 (10th Cir.1940), to the extent it holds otherwise, but would leave intact its characterization of the guarantee against double jeopardy as a personal right.

**4.** In *Haring,* the Court held that a guilty plea does not establish that a defendant has waived any Fourth Amendment claims he seeks to pursue under 42 U.S.C. § 1983, notwithstanding that he may have forfeited the opportunity to raise the identical issue in a habeas corpus proceeding.

and sentence depriving him of his life or his liberty."

304 U.S. at 467–68, 58 S.Ct. at 1024 (emphasis added). Like the guarantee against double jeopardy described in *Menna,* the right to counsel deprives a court of power to proceed against an accused who is unrepresented. Yet *Zerbst* was a landmark decision precisely because of its statement that such a right may be knowingly and voluntarily relinquished. *See id.* at 465, 58 S.Ct. at 1023. It thus does not follow from the Court's jurisdictional characterization that the guarantee against double jeopardy is somehow exceptional and may never be deliberately relinquished.[5] *Accord Launius v. United States,* 575 F.2d 770, 772 (9th Cir.1978).

Although I conclude that a double jeopardy claim may be waived, I agree with Judge Bohanon, author of the panel opinion, that there has been no waiver in this case. *Menna* confirms that any waiver of a double jeopardy claim must be deliberate in the sense envisioned by *Zerbst.* The defendant in *Menna* had raised the defense prior to pleading guilty. The New York Court of Appeals therefore construed his guilty plea as a knowing and voluntary waiver. *See People v. Menna,* 36 N.Y.2d 930, 373 N.Y.S.2d 541, 335 N.E.2d 848 (1975). In reversing, the Supreme Court held that a guilty plea relates only to factual guilt and does not by itself imply a deliberate decision to relinquish a legal claim, notwithstanding that the defendant was aware of the claim at the time of his plea. *See Menna,* 423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2. An affirmative and unambiguous indication of waiver is thus required. Indeed, as a practical matter, "[a] double jeopardy defense is normally not the type of claim that would be foregone for some strategic purpose." *United*

*States v. Anderson,* 514 F.2d 583, 586 (7th Cir.1975).

In this case, defendants did not receive a copy of the second indictment until almost four days after its filing. They pleaded guilty the same day. The record indicates that a waiver of double jeopardy rights was neither bargained for by the Government nor otherwise discussed with defense counsel. Counsel's uncontroverted affidavit reveals that defendants did not consider the question of double jeopardy prior to pleading guilty. Before accepting defendants' pleas, the trial judge recited a litany of constitutional rights, but did not mention the Double Jeopardy Clause. Even without invoking the presumption against waiver of constitutional safeguards, it is clear that defendants did not *deliberately* relinquish their right to challenge the indictments against them.

In dissent, Judge Barrett argues that defendants forfeited their double jeopardy claim by failing to raise the issue below as required by Fed.R.Crim.P. 12(b)(2). *See* Barrett Dissent at 813–815. The rule provides:

"**(b) Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial:*

. . . .

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)...."

Fed.R.Crim.P. 12(b)(2) (emphasis added). Professor Wright has answered the Rule 12 forfeiture argument as follows: "As a

---

**5.** Lower federal courts, including this one, have actually gone further in another context: litigants may consent to the exercise of subject matter jurisdiction and attendant Article III powers by non-Article III magistrates, irrespective of the rights being adjudicated. *See, e.g., United States v. Dobey,* 751 F.2d 1140 (10th Cir.1985) (appeal pending); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.) (en banc), `cert. denied, — U.S. —,* 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983).

pleading matter this may well be true. The vice however, of multiplicity is that defendant may be given multiple sentences for a single offense. If this happens, the sentence is illegal and may be corrected at any time." 1 C. Wright, Federal Practice & Procedure § 193, at 702 n. 31 (2d ed. 1982); *see also id.* § 145, at 525–26 & n. 14.

> " 'The argument that one waives his right to object to the imposition of multiple sentences by his fail[ing] to object to the multiplicious nature of an indictment is a *non sequitur*. Rule 12 applies only to objections with regard to the error in the indictment itself; the effect of Rule 12 is that dismissal of a multiplicious indictment is not required; however, if sentences are imposed on each count of that multiplicious indictment the defendant is not forced to serve the erroneous sentence because of any waiver.' "

*Launius*, 575 F.2d at 772 (quoting *United States v. Rosenbarger*, 536 F.2d 715, 721–22 (6th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977)); *see also United States v. Mastrangelo*, 733 F.2d 793, 800 (11th Cir.1984); *United States v. Marino*, 682 F.2d 449, 454 n. 3 (3d Cir.1982). It is noteworthy that Rule 12(b)(2) excepts jurisdictional issues from those which must be raised pretrial. Given the Supreme Court's characterization of double jeopardy and the facts of *Blackledge*, it is apparent that Rule 12(b)(2) is no bar to raising a double jeopardy claim even post trial. Although Broce's prison sentences ran concurrently, both he and his company received cumulative fines on the two indictments. They did not forfeit the right to contest the constitutionality of those fines by failing to raise the issue during the brief interval before pleading guilty.

The question remains whether the Double Jeopardy Clause has been violated. Judge Barrett would hold that the indictments facially charged two separate conspiracies and that, by pleading guilty to the facts alleged in the indictments, Broce is factually barred from claiming a double jeopardy violation. Barrett Dissent at 810 –811. The majority declares the double

jeopardy question to be one of fact which must first be determined by the trial court on remand. Majority Op. at 797.

If the indictments in this case alleged two separate conspiracies with sufficient clarity and specificity, then a plea of guilty to each arguably could be construed as establishing that two such conspiracies existed. As an example, Judge Barrett relies upon the case of *Kerrigan v. United States*, 644 F.2d 47 (1st Cir.1981). The indictments against Kerrigan clearly charged two separate conspiracies to transport stolen goods in interstate commerce. One conspiracy allegedly occurred between the specific dates of August 25 and September 1, 1977, with two named coconspirators. The other, involving different goods, allegedly occurred between September 1 and September 22, 1977, with only one of the previously named co-conspirators. The court held that Kerrigan could raise a double jeopardy claim only by repudiating the alleged facts to which he had pleaded guilty:

> "Evaluated in this way, Kerrigan's claim is quite different from that asserted in *Launius;* far from being facially multiplicitous, as in *Launius*, Kerrigan's indictments sufficiently describe two separate and distinct offenses, for which Kerrigan could be constitutionally sentenced to two separate terms of imprisonment."

*Id.* at 49.

Unlike *Kerrigan*, this case presents a clear example of two indictments which, because of imprecise draftsmanship, fail to rule out the existence of a single continuing conspiracy. The indictments are virtually identical, differing only in that they purport to charge bid-rigging with respect to different Kansas highway projects. The first indictment, however, also refers to the discussion of additional projects not specified in the indictment. The Government's "Statement of Facts in Support of Pleas," which was attached to the plea agreements in this case, further reveals that these additional projects were not all let on the same

date.[6] Neither of the indictments eliminates the possibility that the overt act of bid rigging alleged in the second indictment fell within the scope of the conspiracy charged in the first. The indictments give no indication of when either conspiracy ended, thereby implying an overlap in time; and they refer to "known and unknown" individuals, thereby implying an overlap of participants.

These features raise a presumption that the two indictments concerned a single conspiracy. *See United States v. Novak,* 715 F.2d 810, 818 (3d Cir.1983) (citing *United States v. Mallah,* 503 F.2d 971, 985–87 (2d Cir.1974)), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). "[I]t is the government which has control over the drafting of indictments. Any burden imposed by the imprecision in the description of separate offenses should be borne by it." *United States v. Inmon,* 568 F.2d 326, 332 (3d Cir.1977).

"Blanket charges of 'continuing' conspiracy with named defendants and with 'other persons to the grand jurors unknown' fulfil a useful purpose in the prosecution of crime, but they must not be used in such a way as to contravene constitutional guaranties. If the government sees fit to send an indictment in this general form charging a continuing conspiracy for a period of time, it must do so with the understanding that upon conviction or acquittal further prosecution of that conspiracy during the period charged is barred, and that this result cannot be avoided by charging the conspiracy to have been formed in another district where overt acts in furtherance of it were committed, or by charging different overt acts as having been committed in furtherance of it, or by charg-

ing additional objects or the violation of additional statutes as within its purview, if in fact the second indictment involves substantially the same conspiracy as the first.... The constitutional provision against double jeopardy is a matter of substance and may not be thus nullified by the mere forms of criminal pleading." *Short v. United States,* 91 F.2d 614, 624 (4th Cir.1937); *see also United States v. Abbamonte,* 759 F.2d 1065, 1070 (2d Cir. 1985).

Given the vagueness of the indictments, defendants could not and did not admit the existence of separate conspiracies merely by pleading guilty to the facts alleged.[7] They are therefore not barred from establishing the existence of one continuing conspiracy. While the majority agrees with this view of the indictments, it would remand for an initial determination of the factual question. I submit, however, that the issue has already been resolved. In *United States v. Beachner Construction Co.,* 729 F.2d 1278 (10th Cir.1984), this court upheld the factual finding of a single continuing conspiracy to rig bids within the Kansas asphalt industry. After this finding was made but before it was affirmed, the Government in this case stipulated that the record in *Beachner* could be considered in deciding defendants' Rule 35 motion. I read the stipulation as conceding, apart from the issues of waiver and forfeiture, that the factual circumstances presented here are indistinguishable from those in *Beachner* with respect to the existence of a double jeopardy violation.

Even Judge Barrett agrees that the district court's factual determination in *Beachner* should control future cases involving the Kansas asphalt industry:

---

**6.** Although not technically part of the indictment, this statement was on record when defendants' pleas were accepted and it presumably reflects the Government's account of what was to be admitted through their pleas. In any event, the indictment must not be read as referring to a single bid-letting date or it would follow that the Government chose the indictment's language in a deliberate attempt to misstate the facts.

**7.** I do not dispute that a defendant is bound by that to which he pleads and by whatever he states in open court as the basis for his plea. In my view, however, a defendant remains free to offer evidence in support of a surviving double jeopardy claim which does not contradict these admitted facts. *See Menna,* 423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2; *see also Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977).

"[F]ollowing the filing of that opinion, all subsequent prosecutions in the District of Kansas or elsewhere in this circuit involving the identical factual bid-rigging scenario would be controlled by our holding in *Beachner:* that the scheme constituted a single, on-going, continuous conspiracy."

Barrett Dissent at 810–811. The Government has received a full and fair opportunity to litigate this ultimate issue of fact. I see no reason why the *Beachner* findings should not be accorded full preclusive effect in this proceeding. Thus on remand the trial court could not now find that defendants were involved in more than one bid-rigging conspiracy. Because of the unusual relationship between this case and *Beachner*, I would vacate the conviction and sentences in No. 83–2558.

BARRETT, Circuit Judge, dissenting:

Judge O'Connor, in my view, correctly denied relief to the *Broce* defendants pursuant to Fed.R.Crim.P. 35(a) which provides that "[T]he court may correct an *illegal* sentence at any time and may correct a sentence imposed in an *illegal* manner within the time provided herein for the reduction of sentence." (Emphasis supplied.) At the time the guilty pleas were voluntarily entered in *Broce*, the *Beachner* opinion had not been filed. In fact, *Beachner* did not come down for more than two years after the *Broce* pleas were entered. There was, then, absolutely nothing *facially illegal* about the two indictments to which *Broce* pled guilty. They charged separate, independent conspiratorial acts in violation of the antitrust laws. There had been no judicial precedent *at that time*

finding, as a *matter of fact*, that the separate "rigged" highway bids were other than separate conspiracies. Although the parties stipulated that Judge O'Connor "may consider the record made in the evidentiary hearing on the Motion to Dismiss [in *Beachner* ] ... in ruling on the merits of defendants' Motion to Vacate Sentence Pursuant to Rule 35(a) ..." (R., Vol. I, p. 97), the district court was not required to apply *Beachner* retroactively. Judge O'Connor did, however, consider the *Beachner* record.[1]

The facts of this case are not in dispute. The *Broce* defendants were initially charged on *November 7, 1981*, by a two-count indictment for violations of the federal antitrust laws (15 U.S.C. § 1) and the mail fraud statute (18 U.S.C. § 1341) in relation to a specific Kansas highway construction project. Thereafter, on *February 4, 1982*, the *Broce* defendants were charged in a second indictment with a one-count violation of the federal antitrust laws in relation to a separate, distinct Kansas highway construction project. On *February 8, 1982*, pursuant to a plea bargain agreement the *Broce* defendants entered guilty pleas to the charges contained in both indictments. The trial court, prior to sentencing, conducted a detailed, thorough Rule 11 proceeding. There is no contention that the *Broce* defendants were represented other than by competent counsel or that the district court did not meticulously conduct the Rule 11 proceeding. Sentences were entered *March 15, 1982*. The *Broce* defendants filed their Motion to Vacate Sentence on the ground that their sen-

---

1. The panel of this court that handed down *United States v. Beachner Const. Co., Inc.*, 729 F.2d 1278 (10th Cir.1984) (*Beachner*), consisted of then Chief Judge Seth, O'Connor, Chief Judge, United States District Court for the District of Kansas, and Barrett, Circuit Judge, who authored the opinion. We there held in a case involving *the same and identical factual scenario as that before us here* that Judge Saffels *was not clearly erroneous* in concluding that because a common objective was shared by each participating contractor as a single, common and continuous scheme, the record supported the trial court's finding of a single conspiracy.

In the original panel *Broce* opinion reported as *United States v. Broce*, 753 F.2d 811 (10th Cir.1985), it is interesting to note that Judge O'Connor was the trial judge whose order denied the Rule 35 motion to vacate guilty pleas to a second indictment charging separate bid-rigging conspiracies. On appeal Judge Seth dissented from the holding that *Broce* had been subjected to double jeopardy by pleading guilty to two indictments charging conspiracy to violate the antitrust laws.

tences were in violation of the double jeopardy clause on *February 22, 1983. Id.* at 34.

I deem the trial court's reasoning in denying the *Broce* defendants Rule 35(a) relief as set forth in the court's Memorandum and Order important in our determination of the issue. Thus, I quote therefrom:

"The defendants' recent double jeopardy claim was inspired by the January 31, 1983 Memorandum and Order by Judge Dale E. Saffels of this court, in another case involving bid-rigging in Kansas highway construction projects, *United States v. Beachner Construction Co., Inc., et al.*, 555 F.Supp. 1273, No. 82–20076–01. Beachner Construction Co., Inc., was indicted on February 4, 1982, for a violation of the Sherman Antitrust Act and a mail fraud violation. Both charges related to a Kansas highway project let by the state of Kansas on February 7, 1980. Robert Beachner was subsequently indicted for the same alleged offenses. The case proceeded to trial on May 3, 1982 (*'Beachner I'*). By a verdict rendered on May 7, 1982, a jury acquitted both defendants of the conspiracy and mail fraud charges.

"On November 16, 1982, another indictment was returned by the grand jury, naming Beachner Construction Co., Inc., and Jerry Beachner as defendants. This indictment (*'Beachner II'*) contained three counts alleging violations of § 1 of the Sherman Act, and three counts alleging mail fraud violations. Judge Saffels found the *Beachner I* and *Beachner II* indictments to be identical, with the exception that *Beachner II* named Jerry Beachner rather than Robert Beachner, and that *Beachner II* specified three different highway projects.

"In *Beachner II*, Beachner Construction Co., Inc., moved to dismiss the November 16, 1982 indictment, alleging *inter alia* double jeopardy and collateral estoppel. Following an evidentiary hearing, the court entered its January 31, 1983 Memorandum and Order, in which it concluded that the conspiracies charged in *Beachner I* and *Beachner II* were merely separate parts of a single larger and ongoing bid-rigging conspiracy that had been continuing for several years. Accordingly, Judge Saffels granted Beachner Construction Co., Inc.'s motion to dismiss.

*Discussion*

"The defendants in the instant case, Broce Construction Co., Inc., and Ray C. Broce, contend that in light of Judge Saffels' decision in *Beachner II*, the judgment and sentence in Case No. 82–20011–01 constitutes a violation of the double jeopardy clause because it sentenced the defendants on two separate highway projects, as separate conspiracies, although they were both part of a single overall conspiracy to rig bids on Kansas highway construction projects. In addition, Broce Construction Co., Inc., contends that the total of 1.5 million dollars in fines imposed by the court was illegal because it exceeded the legal penalty of one million dollars per violation, as prescribed by 15 U.S.C. § 1.

"The defendants contend that in light of Judge Saffels' *Beachner II* ruling, they were guilty of only one bid-rigging offense—a single conspiracy—rather than two. The defendants thus allege that the sentence imposed by the court violates the double jeopardy clause on the ground of multiplicity in that it punishes them twice for a single offense.

"It is certainly clear that the double jeopardy clause does protect a defendant against multiplicity of punishment. In *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the Court stated:

That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. *And it protects against multiple punishments for the same offense....*

(Footnotes omitted) (emphasis added).

"The defendants thus contend that they should be entitled to take advantage of Judge Saffels' *Beachner II* ruling because a Rule 35(a) motion can be raised 'at any time.' Although it is the general rule that a Rule 35(a) motion can be raised at any time [*Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *United States v. Golay*, 560 F.2d 866, 870 (8th Cir.1977)], the government argues that the defendants waived their double jeopardy claim because it was not timely raised and because the defendants pleaded guilty to two separate conspiracies. The issue in the case is therefore whether a plea of guilty to counts alleging two separate conspiracies constitutes a waiver of a claim of double jeopardy on the ground that the defendants are being subjected to multiple punishment for a single offense.

\*　　\*　　\*　　\*　　\*　　\*

"In *Menna*, even though the defendant's guilty plea admitted the facts of his offense, the indictment—*on its face*—arguably violated the double jeopardy clause by charging him a second time for the conduct that was the subject of his previous contempt conviction. Thus, the defendant's double jeopardy claim was not rendered irrelevant by his guilty plea because the indictment *on its face* sought to punish the same conduct, thereby giving rise to a possible double jeopardy violation. In contrast, the challenged second indictment in the instant case (No. 82–20011–01) does not *on its face* seek to punish the defendants for the same conduct for which they were charged in the previous indictment (No. 81–20119–01). *Menna* left unanswered the question of whether a plea of guilty to one or more counts not multiplicious on their face constitutes a waiver of a claim of double jeopardy.

"Our research reveals that few courts have squarely confronted this question left unanswered by the Supreme Court in *Menna*. Although the defendants have cited two broadly-worded opinions for the proposition that a guilty plea does not constitute a waiver of a double jeopardy claim, *United States v. Broussard*, 645 F.2d 504 (5th Cir.1981); *Launius v. United States*, 575 F.2d 770 (9th Cir.1978), neither of these cases involved a plea of guilty to an indictment or information that was not multiplicious on its face. In other words, the cases cited by the defendants are entirely within the scope of the rule announced in *Menna*.

"The defendants point out that there is broad language in the *Launius* opinion to the effect that a waiver of a double jeopardy claim must be a ' "waiver" as defined in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 [1023], 82 L.Ed. 1461 (1938)—the intentional relinquishment or abandonment of a known right or privilege.' 575 F.2d at 772. The government, in response, has cited to a line of cases in the Eighth and Second Circuits to the effect that a claim of double jeopardy is non-jurisdictional and is waived if not timely and affirmatively pleaded. *United States v. Herzog*, 644 F.2d 713, 716 (8th Cir.1981); *McClain v. Brown*, 587 F.2d 389, 391 (8th Cir.1978); *United States v. Perez*, 565 F.2d 1227, 1232 (2d Cir.1977). The Tenth Circuit apparently had not addressed the question of waiver of a double jeopardy claim. We are not convinced, however, that the waiver theories announced in either *Launius* or the *Herzog* line of cases should be applied to the facts of the instant case.

"We believe that the resolution of the pending motion should be controlled by the opinion in *Kerrigan v. United States*, 644 F.2d 47 (1st Cir.1981), which more closely resembles the facts and the resulting legal issues of the matter at bar than does any other case cited by the parties or uncovered by the court's research. Kerrigan was indicted in two separate indictments by a federal grand jury. The first indictment charged that Kerrigan conspired with others, between August 25, 1977, and September 1, 1977, to transport and to sell stolen lithographs. The second indictment charged that Kerrigan conspired with one of his previous co-conspirators, between September 1, 1977, and September 22, 1977, to transport and to sell stolen Indian jewelry. The second indictment also charged Kerrigan with a substantive count of trans-

porting the stolen jewelry in interstate commerce. Kerrigan pleaded guilty to the two conspiracy charges, each before a different judge, and in exchange the government dismissed the substantive count. On March 15, 1978, Kerrigan was sentenced to three years for the jewelry conspiracy and two years (consecutively) for the lithograph conspiracy. After his sentencing, Kerrigan challenged the two-year sentence on the ground that the two charges involved parts of a single conspiracy. The district court adopted the magistrate's finding that the indictments charged separate conspiracies, and rejected Kerrigan's challenge to his sentence.

"On appeal, Kerrigan again asserted that there was only one conspiracy and argued, relying on *Menna* and *Launius,* that his guilty plea did not waive his right to raise the double jeopardy claim. In the opinion for the First Circuit, Judge Campbell discussed *Menna* and *Launius* at some length.

> *Menna* and *Launius* do indeed indicate that a double jeopardy claim may lie notwithstanding a guilty plea, but in neither case did the double jeopardy claim depend upon a repudiation of the allegations in the indictment to which the plea had been entered. These cases do not hold, as Kerrigan suggests, that a defendant who pleaded guilty may later contest the factual and theoretical foundations of the indictment to which he pleaded, so as to show that, in fact, he committed only a single offense. The court in *Launius* explicitly and correctly stated that 'By pleading guilty appellants admitted the facts alleged in the information.' [Citations omitted]. Kerrigan's claim of double jeopardy must be evaluated under the version of facts stated in the indictment, not against an alternative version of events which Kerrigan now claims is more accurate. Evaluated in this way, Kerrigan's claim is quite different from that asserted in *Launius;* far from being facially multiplicitous, as in *Launius,* Kerrigan's indictments sufficiently described two separate and distinct offenses, for which Kerrigan could

be constitutionally sentenced to two separate terms of imprisonment.

644 F.2d at 49.

"Judge Campbell concluded that:

> the two agreements charged related to commission of crimes which were similar but distinct. Thus, facially, it is possible to have had two conspiracies.... By pleading guilty, Kerrigan accepted the government's two-conspiracy allegations, and it is too late for him to try to establish something else. The factual allegations of the indictments sufficiently charge two separate conspiracies; Kerrigan is bound by these facts because of his guilty pleas; and Kerrigan has therefore not been twice placed in jeopardy for the same offense.

> *Id.*

"The similarity between the facts of the case now at bar and those of *Kerrigan* is inescapable. Defendants Ray C. Broce and Broce Construction Co., Inc., pleaded guilty to two separate indictments alleging different conspiracies beginning at different times (more than one year apart) and involving different construction projects. On their faces, the indictments alleged two distinct criminal conspiracies, and the defendants pleaded guilty to each, acknowledging the validity of the facts contained in each indictment. Accordingly, we feel compelled to adopt the First Circuit's reasoning that the defendants 'accepted the government's two-conspiracy allegations, and it is too late for [them] to try to establish something else.' 644 F.2d at 49.

"There remains, however, the defendants' suggestion that, notwithstanding their pleas of guilty, Judge Saffels' subsequent ruling in *Beachner II,* that there was only one agreement among Kansas contractors to rig bids, rendered their sentences invalid and that it now 'appears from the face of the indictments that but one conspiracy existed for which defendants have been twice punished.' (Defendant's Reply, at 9.) In support of this theory that an intervening court decision can merge the contents of previous indictments alleging

two conspiracies into a single conspiracy, the defendants cite *Smith v. United States*, 287 F.2d 270 (9th Cir.1961).

"In *Smith*, the defendant pleaded guilty to a three-count information arising out of a bank robbery. Each count charged the defendant with violating a different subsection of 18 U.S.C. § 2113. After the defendant was sentenced, the Supreme Court of the United States, in another case, held that the subdivisions of 18 U.S.C. § 2113 charged but one offense and that the imposition of more than one sentence was illegal. As a result, the defendant's sentence was corrected.

"We are not persuaded that this line of reasoning is applicable here. *Smith v. United States* is distinguishable from the situation at bar in that the intervening decision in that case involved a question of *law:* the operation of a statute. Consequently, the Supreme Court's decision was applicable to Smith's case. Judge Saffels' finding of a single conspiracy in *Beachner II*, however, was a *factual* determination made in light of the evidence produced at an evidentiary hearing in that particular case. It is well settled that the question whether a single conspiracy or multiple conspiracies exist is a question of fact. *United States v. Elam*, 678 F.2d 1234, 1245 (5th Cir.1982); *United States v. James*, 576 F.2d 1121, 1126 (5th Cir.1978); *United States v. Armedo-Sarmiento*, 545 F.2d 785, 789 (2d Cir.1976), *cert. denied*, 430 U.S. 917 [97 S.Ct. 1331, 51 L.Ed.2d 595] (1977); *United States v. Ippolito*, 509 F.Supp. 1205, 1208 (E.D.N.Y.1981). Accordingly, we do not believe that at this late date the defendants should be permitted to take advantage of a factual determination that is inconsistent with the facts the defendants admitted in pleading guilty to the indictments alleging two separate conspiracies.

"We do not agree with the defendants' allegation that '[t]he position of the government would effectively deprive any defendant who pleads guilty of the right to file a Rule 3[5] motion which specifically preserves this right to those who plead guilty.' (Defendants' Reply, at 10.) We hold mere-ly that where a defendant by pleading guilty admits facts that do not give rise to a double jeopardy claim, he will not later be permitted to raise a double jeopardy claim that depends upon a version of the facts different from that he has admitted."

(R., Vol. II, pp. 281–90.) It is apparent from the above-quoted excerpt of Judge O'Connor's Memorandum and Order that he carefully considered the record in *Beachner* yet properly denied the *Broce* defendants relief because they had pled guilty to facially legal indictments, their pleas admitted the factual basis of the charges, and *Beachner* did not control this case.

## I.

### Menna and Blackledge

The trial court, unlike the majority, found that *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) was not applicable here. By analogy, the same rationale would apply to *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), which case was not addressed by the trial court. I agree with the trial court's analysis. Thus, I conclude that *Menna* and *Blackledge* do not apply to the case at bar.

Significantly, in both *Menna* and *Blackledge*, the double jeopardy challenge was posited (like *Beachner*) prior to trial. I recognize that this is not always conclusive, but it weighs heavily here. It was not of significance in *Menna* because plainly—without the need of an evidentiary hearing—*Menna* had been twice placed in jeopardy: Menna had initially been incarcerated on a contempt charge *for refusal to obey a court order to appear and testify before the grand jury.* Thereafter, following denial of his motion to dismiss the indictment *for refusal to answer questions before the same grand jury,* he entered a guilty plea thereto and was sentenced. The Supreme Court logically held that Menna's earlier conviction for contempt was a criminal conviction *"for the same crime as the one charged in the instant indict-*

ment." 423 U.S. at 62, n. 1, 96 S.Ct. at 242, n. 1 (emphasis supplied). *No evidentiary hearing involving the fact-finding process was required to arrive at that logical conclusion.*

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), again there was no fact-finding evidentiary hearing required in order for the Supreme Court to conclude that after *Blackledge* had been charged, tried and convicted by the state authorities on a *misdemeanor* charge that he could not subsequently be charged, tried and convicted by those same state authorities on a *felony* charge involving *the identical facts and circumstances.* The Supreme Court held that the felony charge was lodged against Blackledge in retaliation to his filing of a petition for trial *de novo* of his misdemeanor conviction, constituting a deprivation of due process of law. Neither *Menna* nor *Blackledge* involve the rule at the heart of the case at bar: absent a statutory impediment (i.e., lack of subject matter jurisdiction) or a Due Process deprivation (i.e., filing a subsequent charge in retaliation to a defendant taking appeal from an earlier conviction), the rule in this circuit has long been—and continues to be after *Menna* and *Blackledge*—that an accused *waives* his claim of double jeopardy to a subsequent criminal charge if the crimes charged, *on their faces*, are separate and distinct and if the evidence necessary to establish guilt as to one charge differs from that necessary to establish guilt as to another. In such case, we have held that the right not to be placed in jeopardy twice for the offense is a personal right which may be waived by a guilty plea. *Caballero v. Hudspeth*, 114 F.2d 545 (10th Cir.1940); *Cox v. Crouse*, 376 F.2d 824 (10th Cir.1967); *Cox v. State of Kansas*, 456 F.2d 1279 (10th Cir.1972); *United States v. Rich*, 589 F.2d 1025 (10th Cir.1978); *Meyer v. State*, 47 Md.App. 679, 425 A.2d 664; 24 A.L.R.4th 1313.

These cases are consistent with Judge O'Connor's reliance on *Kerrigan v. United States*, 644 F.2d 47 (1st Cir.1981). This is the *only* case, in the course of our research, which closely fits the niche of the facts of the instant case. Kerrigan pled guilty and was sentenced under two indictments, both of which charged him with conspiracy to transport stolen goods in interstate commerce. Thereafter, Kerrigan brought a habeas corpus action contending that his sentence should be vacated on the ground that it violated his Fifth Amendment rights not to be twice placed in jeopardy for the same offense. The court of appeals affirmed the district court's denial of relief and pertinently observed:

*Menna* and *Launius* do indeed indicate that a double jeopardy claim may lie notwithstanding a guilty plea, but in neither case did the double jeopardy claim depend upon a repudiation of the allegations in the indictment to which the plea had been entered. These cases do not hold, as Kerrigan suggests, that a defendant who pleaded guilty may later contest the factual and theoretical foundations of the indictment to which he pleaded, so as to show that, in fact, he committed only a single conspiracy. The court in *Launius* explicitly and correctly stated that "By pleading guilty the appellants admitted the facts alleged in the information." *Brady v. United States*, 397 U.S. 742, 748 [90 S.Ct. 1463, 1468, 25 L.Ed.2d 747] ... (1970); *Willard v. United States*, 445 F.2d 814, 816 (7th Cir. 1971). *Kerrigan's claim of double jeopardy must be evaluated under the version of facts stated in the indictment, not against an alternative version of events which Kerrigan now claims is more accurate. Evaluated in this way, Kerrigan's claim is quite different from that asserted in Launius; far from being facially multiplicitious, as in Launius, Kerrigan's indictments sufficiently describe two separate and distinct offenses, for which Kerrigan could be constitutionally sentenced to two separate terms of imprisonment.*

644 F.2d at 49 (emphasis supplied).

Consistent with the logic of *Kerrigan*, it is my view that the *only* effect that can be firmly placed on *Beachner* is that *following the filing of that opinion, all subse-*

*quent* prosecutions in the District of Kansas or elsewhere in this circuit involving the identical factual bid-rigging scenario would be controlled by our holding in *Beachner:* that the scheme constituted a single, on-going, continuous conspiracy. To that extent and only to that extent the Government should be collaterally estopped from relitigating the precise, identical issue in subsequent criminal prosecutions. This is simply the application of the principle of issue preclusion. *See, Bullock v. Pearson,* 768 F.2d 1191 (10th Cir., 1985). Thus, there is no analogy between *Broce* and the double jeopardy bar found in *Blackledge* based upon a due process deprivation of a fundamental nature.

The majority opinion does, as the Government contends, (a) encourage defendants to challenge their sentences long after their guilty pleas are entered, effectively undermining the effectiveness of the criminal justice system and the finality of convictions, and (b) discourage federal prosecutors from entering into plea bargaining with all advantages cast on the side of the defendant and the government realistically inviting deprivation of its benefits under the plea bargain.

The analogy between the instant case and *Kerrigan,* in the double jeopardy context, is strikingly clear: Evaluating the allegations in the indictment *both* from a factual viewpoint and applicable law *existing at the time of the Broce plea,* the double jeopardy claim must fail. Notwithstanding Judge Saffels' finding of fact in *Beachner* that the various highway contractors entered into a single, ongoing conspiracy to rig highway construction bids, this *was not* a binding rule of law when the *Broce* pleas were entered, voluntarily and upon advice of competent counsel. This court did not affirm Judge Saffels' *Beachner* finding/conclusion (single versus multiple conspiracies) *until more than two years after the Broce guilty pleas* had been entered admitting the facts alleged, i.e., that each separate highway bid rigged contract constituted a *separate, single,* conspiracy.

*Caballero v. Hudspeth, supra,* was an appeal from the district court's denial of habeas corpus relief. We there held on appeal, that the defendant's guilty plea to a two count indictment involving violation of the White Slave Act was improper (but not invalid) because the emphasis of the statute is on the interstate transportation and in this case there was but *one trip,* and that the one transportation involved but one offense. The defendant had been charged and pled guilty to two counts involving transportation of one Elise Herbert: one count charged that the defendant intended to compel her to engage in prostitution; the second count charged that the defendant intended to unlawfully cohabit with her. This court held, however, that the charges were *facially* valid and that the defendant was not subjected to double jeopardy because he entered the guilty plea voluntarily, while represented by competent counsel, and did not object to the charges at any stage of the proceeding. Under these circumstances, we held that the right not to be placed in jeopardy twice is a personal right which may be waived by a plea of guilty.

In *Cox v. State of Kansas, supra,* Cox, a state prisoner, appealed a district court denial of his petition for federal habeas corpus relief. Cox had been convicted, following his guilty plea in 1966, to a charge of second degree kidnapping. Cox relied on *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). There, Benton had been tried in a Maryland state court for burglary and larceny. He was acquitted of larceny but found guilty of burglary. Because the jury had been selected under an invalid Maryland constitutional provision, Benton was given the option of demanding re-indictment and retrial. He was re-indicted for both larceny and burglary. *Prior to retrial,* Benton moved to dismiss the larceny charge on the ground of double jeopardy. The motion was denied and Benton was subsequently convicted of both larceny and burglary. The Supreme Court struck down the larceny conviction because of his acquittal of this charge in the first trial. *There was no contention made that*

*the charges (larceny and burglary) were facially invalid and other than separate, distinct offenses.* Cox, unlike Benton, *did not challenge the indictment prior to trial.* In denying Cox federal habeas relief this court quoted *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970): "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

*Menna* discloses the double jeopardy bar *on the face* of the charges involved. *Blackledge* discloses a prosecutorial intent to deny Blackledge due process of law by initiating *felony* proceedings arising out of the same acts and circumstances as those involving a *misdemeanor* conviction he was appealing. The due process deprivation was that of retaliation for Blackledge's appeal from the misdemeanor conviction. Neither case, I submit, involved the situation presented here: the *Broce* pleas were to charges contained in indictments alleging separate, distinct conspiracies *on their face;* there was no statutory impediment creating lack of subject matter jurisdiction; there was no substantive due process violation by the prosecution; and there were no judicial opinions *then* in being and controlling dictating that the indictments to which Broce pled guilty were duplicitous. Judge Seth, in his *Broce* dissent, logically dissected *Menna:*

> Virtually all the courts of appeal since *Menna* have continued to hold that the defense is waived if not raised in some way before trial *as it was in Menna.* This is a perfectly reasonable construction of *Menna* where the defense was so raised. The Court in *Menna* stated that a plea of guilty "removes the issue of factual guilt from the case." The Court also there stated:
>
> > We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that— judged on its face—the charge is one

which the State may not constitutionally prosecute.

*The indictments in the case before us do on their faces allege separate offenses.* By the guilty pleas the defendants admitted the recitations in the indictments, and these are the facts to be used in evaluating the double jeopardy claims. *Kerrigan v. United States,* 644 F.2d 47 (1st Cir.1981). These facts recite separate offenses.

The case which upholds appellants' position that *Menna* precludes waiver, and it may be the only case, is *Launius v. United States,* 575 F.2d 770 (9th Cir. 1978). The post-*Menna* cases with contrary holdings (or which consider situations where the defense was raised at or before trial and so hold no waiver) include: *United States v. Pratt,* 657 F.2d 218 (8th Cir.1981); *United States v. Broussard,* 645 F.2d 504 (5th Cir.1981); *United States v. Gaertner,* 583 F.2d 308 (7th Cir.1978); *United States v. Inmon,* 568 F.2d 326 (3rd Cir.1977); *United States v. Wild,* 551 F.2d 418 (D.C.Cir. 1977)....

753 F.2d 811, 824 (10th Cir.1985) (emphasis at the end of the first paragraph supplied).

## II.

### The Waiver Issue

The majority opinion, in reliance on *Menna* and *Blackledge,* seems to paint a broadswath rule that a double jeopardy claim cannot be waived. Those cases do not and cannot stand for such a broad rule. In both *Menna* and *Blackledge* the Court was dealing with obvious *jurisdictional* problems: the very power to prosecute a second time.

*Broce* does not present a jurisdictional problem. Thus, our well-recognized rule that a claim of double jeopardy is a personal right which may be waived is fully applicable. *Broce,* just as *Beachner,* presented a factual issue as to whether the conspiracies charged in the separate indictments arose out of *one* continuous, ongoing scheme (and thus one conspiracy) or separate, distinct conspiracies. There is noth-

ing unique in challenges to such indictments under the Double Jeopardy Clause. In making such determinations, the issue presented is *one of fact* for the court or jury. *United States v. Dickey,* 736 F.2d 571, 581 (10th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1984); *United States v. Beachner Const. Co., Inc., supra; United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Petersen,* 611 F.2d 1313, 1327 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980).

In *Dickey, supra,* the prosecution charged a single, ongoing conspiracy among the defendants involving possession and distribution of drugs for profit. On appeal the defendants urged that the *evidence was insufficient* to prove one conspiracy and that it disclosed multiple conspiracies. Thus, the contention was that reversal was required on the ground of variance between the charge and the evidence. This court affirmed the jury's fact-finding of a single, ongoing conspiracy under the clearly erroneous rule. In *United States v. Hines,* 728 F.2d 421 (10th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 3523, 82 L.Ed.2d 831 (1984), we held, in the same vein as the *Blackledge* Court, that various counts of the indictment charging the defendant with breaking and entering a Post Office with intent to commit larceny and steal separate matters (as charged) such as letters containing credit cards, checks, etc., were not multiplicious because the statutes enacted by the Congress made each taking a separate crime and that each required proof of facts which were not required of the other. And in *United States v. DuFriend,* 691 F.2d 948 (10th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983), we held that there was no inherent double jeopardy problem raised by defendant's conviction of *both* conspiracy to possess marijuana and conspiracy to possess marijuana with intent to distribute, relying on *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) for the proposition that "[T]here

clearly is no inherent double jeopardy problem raised by appellant's convictions for both conspiracy to import and conspiracy to distribute marijuana." 691 F.2d at 952.

Rule 12(b)(2), Fed.R.Crim.P. requires that a complaint about the multiplicity of an indictment and its inherent double jeopardy problems must be raised before trial. Any defense, objection or request that is capable of determination without a trial of the general issue may be raised before trial by motion. Wright, *Federal Practice and Procedure: Criminal 2d,* § 193, pp. 692–93. Nothing in *Menna* or *Blackledge* dilutes compliance with this rule *if* the charges to which the defendant pled guilty or was convicted were *valid on their face,* that is: at the time of the plea, the separate charges were not subject to the impediment of lack of subject matter jurisdiction or brought in retaliation or some other deprivation of a due process right of the defendant.

It is important to recall that the *Broce* pleas of guilty were entered on *February 8, 1982.* Judge Saffels entered his order finding a single conspiracy in *Beachner* following a second indictment filed on *November 16, 1982,* some *nine months* after the *Broce* pleas had been entered. Our *Beachner* opinion was not filed until *March 22, 1984.* Beachner did, as previously noted, preserve the double jeopardy challenge by virtue of a pre-trial Rule 12(b)(2) motion, which generated the pre-trial evidentiary hearing conducted by Judge Saffels leading to the court's finding that only one conspiracy existed involving the Kansas highway construction bid-rigging scheme. In addition to Rule 12(b)(2), it is to be noted that the *Broce* defendants could have availed themselves of Rule 11(b), Fed.R.Crim.P. by entering a conditional plea of guilty manifesting a knowledgeable admission of the facts contained in the indictments, while preserving the issue of double jeopardy. *United States v. Moskow,* 588 F.2d 882 (3rd Cir.1978); *United States v. Zudick,* 523 F.2d 848 (3rd Cir.1975); 33 ALR Fed. 385.

The record before us shows conclusively that the trial court meticulously met all of

the requirements of Rule 11 for acceptance of the *Broce* pleas, including full and complete advisement of the nature of the charges, the length of possible incarceration and other punishment, and advisement that the court was not bound by the plea agreement. The court established the existence of a factual basis for the pleas, the competency of the defendants to plead, the assistance of competent counsel, the voluntariness of the pleas based on the plea agreement, and the defendants' complete understanding of the consequences of the guilty pleas. (R., Vol. II, pp. 102–91.) The court also fully complied with the *ABA Standards*, Pleas of Guilty § 1.4. *Menna* recognizes that a counseled guilty plea validly removes the issue of factual guilt from the case. I conclude that the *Broce* defendants effectively waived their right to collaterally attack their guilty pleas by virtue of their failure to raise the double jeopardy challenge pursuant to Rule 12(b)(2) or Rule 11(b). This, in my view, is precisely the type of case the Supreme Court made reference to in *Menna* when it opined that its holding was not to be considered as one which closed the door to a waiver of a double jeopardy claim by virtue of *all* guilty pleas. 423 U.S. at 63 n. 2, 96 S.Ct. at 242 n. 2.

I turn now to the Rule 35, Fed.Rules Crim.P. motion filed by *Broce* and denied by the district court. That rule provides, *inter-alia:* The court "may correct an *illegal* sentence at any time and may correct a sentence imposed in an *illegal* manner within the time provided herein for the reduction of sentence." Note that an *illegal sentence* may be corrected at any time. *Menna* and *Blackledge* clearly fall in that category. *Broce*, on the other hand, does not. A sentence is illegal under Rule 35 if it is in excess of the statute under which the charge is lodged, or in some other manner violative of an applicable statute. Simply stated, such a sentence is one that the judgment of conviction *does not authorize. United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Thus, in *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) the Supreme Court upheld relief afforded under Rule 35 to correct an illegal sentence. The Court set aside separate sentences imposed under 18 U.S.C. § 2113(e) involving a bank robbery. The Court set aside the sentence on the count which charged that the defendant received stolen property, holding that the subsection of the statute relied on by the Government was not designed to punish one who robs a bank, but rather one who receives the loot from the robber. Thus, unlike *Broce*, the charge was deficient for lack of subject matter jurisdiction. No fact finding process was involved. In like manner, the Court in *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) construed a statute and, as a matter of law, held that the crime of entry into a bank with intent to rob was not a crime separate and distinct from the offense of robbery proper. This case, too, involved the construction and interpretation of a statute leading to the legal conclusion that the sentence was illegal. Congressional intent was carefully considered. Again, the distinction between these cases and *Broce* and *Beachner* is clear.

In *Marteney v. United States*, 216 F.2d 760 (10th Cir.1954), we held that a 28 U.S.C. § 2255 habeas proceeding should be treated as a motion to vacate sentence and proceeded to hold that it affirmatively appeared on the face of the challenged indictment that no federal offense was committed. We there clearly distinguished between indictments which, as a matter of law, do not, *on their face*, charge an offense and those which *do not* involve jurisdictional challenges:

A plea of guilty to an indictment is an admission of all nonjurisdictional facts alleged in the charge, and when the judgment of sentence is collaterally attacked under Section 2255, the sentencing court, indulging in the presumption of regularity *will not disturb its judgment unless the indictment or information shows upon its face that no federal offense has been committed*. We have said that "The test of the sufficiency of the indict-

ment on a motion to vacate a sentence is whether the indictment by any reasonable construction can be said to charge the offense for which the sentence was imposed." *Byers v. United States,* 10 Cir. [ (1949) ], 175 F.2d 654, 656. See also *Pulliam v. United States,* 10 Cir. [ (1949) ] 178 F.2d 777; *Kreuter v. United States,* 10 Cir. [ (1952) ], 201 F.2d 33.... If, however, it affirmatively appears on the face of the indictment or information that no federal offense was committed, the charge is vulnerable to collateral attack ... [a]nd this is so even in the face of a guilty plea, for one cannot plead guilty to an offense which is not affirmatively stated in the charge. 216 F.2d at 762. *See also, United States v. Donohoe,* 458 F.2d 237 (10th Cir.), *cert. denied,* 409 U.S. 865, 93 S.Ct. 157, 34 L.Ed.2d 113 (1972) (a guilty plea waives all nonjurisdictional defenses); *United States v. Watkins,* 709 F.2d 475 (7th Cir.1983) (an indictment not challenged before trial will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant was convicted; however, an indictment which fails to state an offense is a fatal defect which may be raised at any time).

Judge Saffels, in *Beachner,* did not hold, as a matter of law, that there was any lack of subject matter jurisdiction, that the sentence was beyond the scope of the statute or that the sentence was illegally imposed in violation of a statute. He set the *Beachner* sentence aside based upon, and exclusively upon, his *fact-finding determination* following a Rule 12 motion to dismiss, on the ground of double jeopardy. Following an evidentiary hearing held thereon, Judge Saffels found that there was a single, ongoing conspiracy instead of the separate, distinct conspiracies charged by the Government. There were no constitutional underpinnings involved in this finding. It was upheld by this court, on appeal, on the ground that it was not clearly erroneous.

I conclude that Judge O'Connor properly denied *Broce* Rule 35 relief.

## III.

### The Stipulation and the Disposition

The majority opinion may, by inadvertance, have imparted the view that the Stipulation entered into between the parties in this Rule 35 proceeding somehow bound Judge O'Connor to Judge Saffels' single, ongoing conspiracy finding in *Beachner.* Such is simply not the case. The Stipulation reads in full as follows:

Comes now the parties and stipulate that the Court may consider the record made in the evidentiary hearing on the Motion to Dismiss filed by Beachner Construction Co., Inc. in *United States v. Beachner Construction Co., Inc., et al.,* [555 F.Supp. 1273] Case No. 82–20076–01 [ (D.Kan.1983) ] in the United States District Court for the District of Kansas in ruling on the merits of defendants' Motion to Vacate Sentence Pursuant to Rule 35(a) in the instant case.

(R., Vol. I, p. 97.)

The court did consider the *Beachner* hearing record, as evidenced by Judge O'Connor's detailed references thereto. Nothing in the Stipulation provides that Judge O'Connor was bound by Judge Saffels' finding of a single conspiracy in *Beachner* in making his "ruling on the merits" on the Rule 35(a) motion. It is thus puzzling why the majority opinion (page 797) states:

As previously indicated, the parties stipulated in the trial court that the transcript from the evidentiary hearing on the double jeopardy issue in *Beachner* would be incorporated in the record in this case. Thus, our opinion in *Beachner* must have weight here....

Whatever the approach taken in other cases in determining the nature of the charged conspiracy, the stipulation to include consideration of the *Beachner* transcript presents a unique case and permits us to go behind the indictment. Having conceded the applicability of the facts developed in that hearing, the government is not in the position to argue our examination of the issue must be

confined to the pleadings. Can that stipulation by the government be regarded as anything but a concession on its part that the facts of the two cases are so intertwined that one is relevant to the other in consideration of the same legal issue? We think not.

I submit that the question, as posed, implies that Judge Saffels' finding, following a Rule 12 Motion to Dismiss filed in *Beachner, based on all the facts presented at the hearing,* that a single, ongoing conspiracy, rather than multiple conspiracies was established, was binding on Judge O'Connor in the Rule 35 proceeding. That is not so.

First, even though the majority opinion *finds* that "on their face the two (*Broce*) indictments do not appear to charge different conspiracies" (p. 797), neither Judge Saffels, in *Beachner,* nor Judge O'Connor, in *Broce,* so found. Each found to the contrary. Indeed, if Judge Saffels had so found, in *Beachner,* there would have been no reason to conduct the evidentiary hearing on the Motion to Dismiss to determine the issue of the single conspiracy versus multiple conspiracies. In my view, Judge O'Connor was on target (and Judge Saffels obviously agreed) when he found that "on their faces, the indictments alleged two distinct criminal conspiracies, and the defendants pleaded guilty to each, acknowledging the validity of the facts contained in each indictment." (R., Vol. II, p. 288.)

Second, the Stipulation clearly states *only* that Judge O'Connor "may consider" the *Beachner* record made by Judge Saffels. That he did. To suggest that he was legally bound by Judge Saffels' finding is a distortion of the language of the Stipulation. I submit that Judge O'Connor would have considered the *Beachner* record regardless of the Stipulation because *Beachner* was the basis for the *Broce* Rule 35 motion. The *Beachner* record was in the same court presided over by Chief Judge O'Connor. A court may, *sua sponte,* take judicial notice of its own records and preceding records if called to the court's attention by the parties. *St. Louis Baptist*

*Temple v. F.D.I.C.,* 605 F.2d 1169 (10th Cir.1979); *Ginsberg v. Thomas,* 170 F.2d 1 (10th Cir.1948). Thus to remand this case to the district court for a "hearing" to look behind the indictments appears to be an attempt by the majority to advise the district court to *apply Beachner* retroactively when the district court has already considered its effect on this case.

Third, I submit that the *only* way that *Beachner* could have controlled *Broce* in the Rule 35 proceeding is *if Beachner* had been decided prior to the acceptance of the voluntary guilty pleas entered by the *Broce* defendants. Such, however, was not the case. The *Broce* guilty pleas were entered *prior* to the *Beachner* decision rendered by Judge Saffels on the Motion to Dismiss. Thus, in order for *Beachner* to control in the disposition of the *Broce* Rule 35 proceeding, *Beachner* must necessarily be applied retrospectively.

The majority opinion does not address the issue whether *Beachner* should apply retroactively so as to render the *Broce* pleas illegal. I conclude that this is an issue because of the broad sweep of the majority holding, which seems to be either that *all* guilty pleas are subject to collateral attack or that because of the Stipulation, Judge Saffels' finding of a single, ongoing conspiracy in *Beachner* controls in the remand to the district court. I fail to see why "the Stipulation to include consideration of the *Beachner* transcript presents a unique case and permits inquiry behind the indictment" (p. 797) if the majority does not implicitly hold *Beachner* should be applied retroactively to *Broce.* Judge O'Connor did consider *Beachner.* Thus, I must ask why Judge O'Connor's consideration of the record on remand should lead to a different result unless the majority intends that *Beachner* apply retroactively? Even if we assume *arguendo,* that the *Broce* defendants' guilty pleas did not waive their double jeopardy claim and the Stipulation to consider the *Beachner* record permits the district court to look beyond the face of the indictments, why should the district court find differently on remand?

*Beachner,* decided after *Broce,* does not render the *Broce* indictments duplicitous unless *Beachner* is applied retroactively. Absent a holding that the indictments are facially illegal, which I do not read the majority's opinion to so hold, (nor did Judge Saffels or Judge O'Connor find), I see no reason to remand.

Because there is no infirmity in the statutes under which *Broce* or *Beachner* were indicted and convicted or any other statutory infirmity involved, the only basis upon which *Beachner* can be applied retroactively to render the *Broce* pleas invalid under the double jeopardy clause is to do so in reliance on Judge Saffels' *finding of fact* which occurred subsequent to the *Broce* guilty pleas to *facially valid indictments.* This, I submit, is in violation of the Stipulation and the rule that a voluntary, counseled plea of guilty entered following full compliance with Rule 11 constitutes an admission of facts and all elements contained in the indictment. *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Menna, supra* at n. 2.

In *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) the Supreme Court discussed the retroactive versus nonretroactive application of judicial decisions. Assuming, as I do here, that *Beachner* did announce the controlling rule applicable, i.e., that the highway bid rigging in Kansas was a single, ongoing conspiracy rather than separate conspiracies based upon the distinct contracts for each highway construction project, I do not believe that *Beachner* should be given retroactive application.

*Chevron Oil Company v. Huson* set forth the following test useful in determining the nonretroactive application of judicial decisions:

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or

by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, ... "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

In applying the above test, I conclude: First, the *Beachner* decision did decide a factual issue of first impression whose resolution was not clearly foreshadowed, i.e., whether the highway bid-rigging contracts constitute a single, ongoing conspiracy or multiple, separate conspiracies. Second, the application of *Beachner,* based on the fact-finding process, has only a single purpose and effect and that is to control all prosecutions of highway bid-rigging contractors involved in the conspiratorial enterprise identified in *Beachner* pursued *after Beachner.* Third, it would be inequitable and unjust to void the *Broce* guilty pleas because the defendants were fully counseled and advised. The *Broce* defendants entered the guilty pleas to separate, distinct conspiracies and all parties, including Judge O'Connor, accepted the factual basis for the separate indictments; however, and in addition, the *Broce* pleas were predicated upon a *plea bargain agreement.* The fact that the guilty pleas in this case were entered pursuant to a plea bargain has a special significance. A plea agreement involves *quid pro quo. United States v. Cross,* 638 F.2d 1375 (5th Cir. 1981). Here, the Government agreed not to charge or prosecute certain counts in exchange for the *Broce* guilty pleas. There is no challenge before us that the plea bargain was not handled by the court

and counsel in full compliance with the guidelines set forth in Fed.R.Crim.P., Rule 11(e). It is implicit that in accepting the *Broce* pleas, Judge O'Connor did not look upon the indictments as charging other than separate, distinct conspiracies. No challenge had been posited by the *Broce* defendants prior to entry of the pleas.

In *United States v. Allen,* 724 F.2d 1556 (11th Cir.1984), following a plea bargain, the defendant pleaded guilty to four counts of an indictment and the Government dismissed thirteen counts. Thereafter, defendant collaterally attacked his conviction, on the ground that two counts he pleaded guilty to constituted only a single offense; the court held that the defendant had waived his right to contest the maximum sentence and particularly so in that he had benefitted from the dismissal of thirteen other charges and therefore could not "renege on his part of the bargain." *Id.* at 1558; *United States v. Solomon,* 726 F.2d 677 (11th Cir.1984).

Generally, the doctrine of Double Jeopardy is that one may not be tried or prosecuted a second time for the same offense and it is essential that the second prosecution involve the same act and crime both in law and in fact. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) (the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally for the same offense").

I respectfully submit that *Broce* was not subjected to the bar of Double Jeopardy. In an evidentiary sense, the Double Jeopardy Clause comes into play as "to preclude retrial after reversal of a conviction only when the appellate court has set aside the conviction on the ground that the evidence was legally insufficient to support convic-

tion." *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *United States v. Di Francesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

I would affirm the trial court's order denying defendants' motion to vacate the judgment of conviction pursuant to Fed.R. Crim.P. 35(a).

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent from the majority opinions.

### Preliminary Statement

This is a case in which the United States of America prosecuted Broce Construction Company and its President, Raymond C. Broce. The defendants plead guilty to two counts of conspiracy in restraint of trade, in violation of the Sherman Act, 15 U.S.C. § 1. Ray Broce also plead guilty to one count of mail fraud, 18 U.S.C. § 1341. Broce received a two year prison sentence and $101,000 in fines, $50,000 per conspiracy and $1,000 for the mail fraud conviction. Broce Construction was required to pay $1,500,000 in fines, $750,000 per conspiracy. The contention of the defendants is that these two conspiracies were so connected that they must be considered as a single conspiracy, an argument which is an important issue in the case. We maintain that there are two transactions and two conspiracies.

The fines are claimed to be in violation of the double jeopardy clause of the Fifth Amendment of the Constitution. The argument is that the defendants are being punished twice for a single offense. Another issue raised here is whether or not the defendants waived their double jeopardy claim by entering pleas of guilty to both of the conspiracy charges.

### The Indictments

The first indictment was filed November 17, 1981 in the United States District Court for the District of Kansas, Case No. 81–20119–01. This charged the appellants in

this case and Gerald R. Gumm, an employee of the company, with conspiracy to violate the Sherman Act, 15 U.S.C. § 1, and mail fraud, 18 U.S.C. § 1341, in connection with Project No. 23–60–RS–1080(9), a federal aid highway project let by the State of Kansas.

On February 4, 1982, a second indictment, Case No. 82–20011–01, was returned by the same grand jury, charging the appellants with conspiracy to violate the Sherman Act, 15 U.S.C. § 1. The latter Project No. KRL 29–2(26), was a public highway project also let by the State of Kansas (R.O.A. Vol. 1, p. 1). For purposes of this dissent the indictment filed on November 17, 1981, is referred to as Indictment 1 and the indictment filed on February 4 is treated as Indictment 2.

The present appeal concerns only the conspiracy in violation of the Sherman Act charged in Count I in Indictment 1, and the Sherman Act conspiracy in Indictment 2. The defendants seek to ignore the proposition that Indictment 2 is a separate and distinct claim. Their reason for this is that they have learned that the only possible door which could bring about a refund of the money paid as a fine would be by way of regarding the two indictments here considered as a single transaction, a conclusion which is not tenable. It was only after Mr. Broce had served his prison term that the idea of treating the two conspiracies as one transaction came to the surface. They claim that if there is but one transaction the fine should be returned. The theory is entirely new in a criminal case. These two transactions are not related so as to link these two projects. They have independent construction programs. Also they do not come together. They were some distance apart.

They would have us look back to a two year old plea of guilty which they say caused the payment of the $750,000 fine. It is said to have been a mistake of law the effect of which could result in being fined twice for one violation. They maintain that the two indictments are one transaction even though they are set forth in two

transactions which do not pretend to be one.

We hold that the one transaction theory is invalid; and that these are clearly independent transactions. This single transaction idea was an afterthought. The defense has contended ever since Mr. Broce finished his prison term that it was a single transaction, as the result of which they claim that they are entitled to have returned their money paid as a fine in the second transaction. The effort to thus create a "single" transaction has no support in the cases or in the facts developed.

Appellants would have us look back two years to the plea of guilty and the $750,000 fine. They contend that this plea was the result of a mistake of law which should be recognized and the $750,000 should be restored. But even if the defendants have lost interest in this second indictment, we have not. Nor should we give them an *ex post facto* restoration which was also the product of afterthought. To consider this it would be necessary to find that the plea of guilty was unlawful and void. This is hard to accept in the present circumstances inasmuch as the plea of guilty was accepted by Broce as part of a plea bargain.

### The Pleas of Guilty

On February 8, 1982 the appellants entered pleas of guilty in accordance with a plea bargain entered into between the defendants and the United States. (R.O.A. Vol. 2, p. 167) Defendant Ray C. Broce plead guilty to both counts of Indictment No. 1 and to Indictment No. 2. Broce Construction Company, Inc. plead guilty to Count I of Indictment No. 1 and Count I of Indictment No. 2 (R.O.A. Vol. 2, pp. 168–169). The defendant Broce, individually and on behalf of Broce Construction Company, affirmatively was advised of and waived rights to a speedy trial by jury, the right to compulsory process, and to cross-examination and the right against self-incrimination. No affirmative mention was made nor was any affirmative waiver given to the defendant's Fifth Amendment rights against double jeopardy.

Sentence was pronounced in case number 1 on March 15, 1982. At that time the corporation was fined the sum of $750,000 on each charge for a total of $1,500,000. The fines were to have been paid one-third by December 31, 1982, one-third by December 31, 1983 and one-third by December 31, 1984. The defendant Ray C. Broce personally was fined the sum of $50,000 and was sentenced to two years imprisonment on Count I of Indictment No. 1. On Count II of Indictment No. 1 he was fined the sum of $1,000 and sentenced to two years of imprisonment to be served concurrently with the sentence on Count I. On Indictment No. 2 defendant Broce was fined the sum of $50,000 and was sentenced to two years imprisonment to run concurrently with the sentences in Indictment No. 1. The fines were committed fines which were to have been paid immediately prior to the defendant's release from incarceration (R.O.A. Vol. 2, p. 203).

### The Motion To Vacate the Judgment

On February 22, 1983, the defendants Broce Construction Company and Ray C. Broce filed a Motion to Vacate the Judgment and Sentence of the trial court in Indictment No. 2. Case No. 82–20011–01 (and to do away largely with the plea bargains), under the provisions of Federal Rules of Criminal Procedure 35(a). The judgment and sentence were alleged to have been illegal in that they violated the double jeopardy clause of the Fifth Amendment to the Constitution of the United States. The contention of Broce Construction Company, Inc. was that the total of $1,500,000 in fines was illegal because it exceeded the $1,000,000 which they insist is the maximum amount if there was only one transaction rather than two (R.O.A. Vol. 1, p. 34 and Vol. 2, p. 212). The allegation of the appellants was that the two indictments presented, although purporting to charge two separate conspiracies, actually charged separate parts of a single overall conspiracy (R.O.A. Vol. 1, p. 34 and Vol. 2, p. 212).

The United States government filed a response to appellants' motions on March 21, 1983. Most of its argument was that the appellants had waived their rights to raise double jeopardy by pleading guilty to both indictments. The government's argument concerning the actual basis for the motion was contained in one sentence: "The charges in the Broce indictments are not multiplicious on their face or in fact."

Defendant's theory in this appeal was inspired by a recent district court opinion by Judge Saffels in a similar case, *United States v. Beachner Construction Co., Inc.* Beachner had been acquitted of one bid-rigging conspiracy (Beachner I) and the government brought another indictment against them on a similar charge (Beachner II). Beachner urged the court to dismiss the record indictment on double jeopardy grounds. Judge Saffels found that the Beachner I and II indictments were different manifestations of a single conspiracy, that being because they described the same conspiracy. The Beachner II indictment named Jerry Beachner rather than Robert Beachner and Beachner II specified three different highway projects. Nevertheless Judge Saffels found that the conspiracies charged in Beachner I and Beachner II were merely separate parts of a single larger and ongoing bid rigging conspiracy which had continued for several years. That opinion adopts the contractors' position. In no way does it stand out as a precedent for this court. This led to adoption of a similar theory in this case even though the facts and their aspects were wholly different.

The court held a hearing on the motion to vacate in the instant case on May 1, 1983. At that time the motion was taken under advisement. The court denied the motion and memorandum and order dated November 18, 1983, and held that the double jeopardy claim had been waived (R.Vol. 1, pp. 100–112 and Vol. 2, pp. 278–290). This appeal was timely filed on November 28, 1983 (R.O.A. Vol. 1, p. 113 and Vol. 2, p. 291).

The question here is whether the double jeopardy clause of the Fifth Amendment of the United States Constitution was violated

in that Ray C. Broce and Broce Construction Company, Inc. were punished twice for a single offense.

The result to the double jeopardy claim of entering a plea of guilty to the conspiracy charge is to add more fuel to the original fire. The fact that a plea of guilty was entered results in confirming by the defendants of both transactions.

There is no great dispute about the double jeopardy clause of the Fifth Amendment prohibiting infliction of multiple punishment for the same offense. There is essentially no dispute that if these indictments reflected one conspiracy that the appellant is not to be punished twice. The essence of *this* appeal is that the two transactions were actually divided into two subparts, one procedural and one factual.

*First,* the procedural question: Did the defendants waive their claims to double jeopardy?

*Second,* do the facts admitted by the appellant in pleading guilty allow this court to find that there was only one conspiracy, rather than two?

### Waiver of the Double Jeopardy Claim

The general rule on waiver of constitutional claims is that a defendant waives all objections of a constitutional nature when he voluntarily and knowingly enters a plea of guilty. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id at 267, 93 S.Ct. at 1608.

The leading case concerning waiver of the double jeopardy provisions of the Fifth Amendment to the Constitution is *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam). In that case Menna had refused to answer questions before a New York State Grand Jury after a grant of immunity. He was adjudged in contempt and sentenced to 30 days in jail. This he served. Approximately ten years later he was indicted for the same conduct. After asserting unsuccessfully, in state court, that the indictment violated the double jeopardy prescription of the Fifth Amendment, he pleaded guilty to the indictment. He then appealed again raising the double jeopardy claim. The New York Court of Appeals declined to address the double jeopardy claim on the merits, holding that it had been waived by Menna's counseled plea of guilty.

The United States Supreme Court reversed in a per curiam decision which held that where the state is precluded by the United States Constitution from hauling a defendant into court on a charge, federal law requires that conviction on that charge be set aside even if conviction was entered pursuant to a counseled plea of guilty. The question is whether this holding is proper authority for the proposition that a claim of double jeopardy is not defeated by an intervening plea of guilty. The decision is confused by the court's statement in Footnote No. 2 to its decision. The Supreme Court ruled that it "did not hold that a double jeopardy claim may never be waived, but simply held that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the state may not constitutionally prosecute."

In the instant case the defendants engaged in widespread plea bargaining. They paid a $750,000 fine. Two years later the defendant tried to renege two years after paying. It was argued by the defendants that they were charged twice. This was based on a new idea that he could challenge the plea of guilty—that he was entitled to challenge the validity of the $750,000 fine. The defendants seem to believe that they are free to renounce their plea of guilty. But the plea of guilty is a solid agreement to stand by the plea bargain. They cannot successfully decide to walk away from the plea of guilty which

served so well before. It is not subject to walking out such as is being allowed by the majority here.

The majority of the circuit has not come to grips with the various features of double jeopardy. However, it seems likely that it would follow the fundamentals. Seemingly it would follow the principle that a plea of guilty is an admission of the elements and material facts of the formal criminal charge contained in the indictment. *See McCarthy v. U.S.* 394 U.S. 459, 89 S.Ct. 1166. All non-jurisdictional defects are accepted.

The Court in *Menna* left unanswered the question of what constitutes a valid waiver of the Fifth Amendment claim and whether or not a plea of guilty to a charge which is not multiplicious on its face constitutes a waiver of the double jeopardy claim. The court did indicate in the same footnote that a counseled plea of guilty is an admission of factual guilt so reliable that it validly removes the issue of factual guilt from the case.

This circuit has no extraordinary knowledge to address these questions. At the same time other circuits have taken opposing positions. The Fifth and Ninth Circuits have had no trouble holding that a guilty plea does not result in the waiver of a double jeopardy claim. *United States v. Broussard,* 645 F.2d 504 (5th Cir.1981); *Launius v. United States,* 575 F.2d 770 (9th Cir.1978). This Ninth Circuit decision indicates that a waiver of a double jeopardy claim *must* be a waiver as defined in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There the court defined a waiver as the knowing relinquishment or abandonment of a known right or privilege. The Eighth and Second Circuits have ruled that a claim of double jeopardy is non-jurisdictional and is waived if not timely and effectively pleaded. *United States v. Herzog,* 644 F.2d 713 (8th Cir. 1981); *McClain v. Brown,* 587 F.2d 389 (8th Cir.1978); *United States v. Perez,* 565 F.2d 1227 (2nd Cir.1977). These decisions thus seem to conflict with the decision in *Menna, supra.* The court below neverthe-

less chose not to apply the waiver theories of either the *Launius* or *Herzog* line of cases. Rather the court chose as controlling the opinion in *Kerrigan v. United States,* 644 F.2d 47 (1st Cir.1981). It stated that the case more closely resembled the facts and issues in terms of the instant one.

In *Kerrigan* two separate indictments which conspired to transport stolen merchandise in interstate commerce. In the first indictment it was averred that Kerrigan, Kirkwood and a third person, Lambert, had conspired and agreed to transport lithographs stolen in Boston, Massachusetts during a period of time between August 25, 1977 and September 1, 1977. The second indictment alleged that Kerrigan and Kirkwood conspired and agreed to transport jewelery stolen from West Dennis, Massachusetts during a time between September 1, 1977 and September 22, 1977. The court held that despite the holdings and findings in *Menna* and *Launius,* a defendant who had pleaded guilty to indictments which did not on their face charge multiple conspiracies could not waive a double jeopardy claim after a plea of guilty.

The court reasoned that the court in *Launius* had stated that "by pleading guilty the defendant admitted the facts alleged in the information." The court further proceeded to hold that after pleading guilty a defendant is precluded from contesting the factual or theoretical basis of the charges. The addition of the theoretical basis for the charges is the court's own. Neither *Menna* nor *Launius* contained any language pertaining to this theory behind the government's case, even though both state that a plea of guilty admits facts alleged.

In *Kerrigan* the court proceeded to analyze the indictment according to tests for double jeopardy in conspiracy cases. In *United States v. DeFillipo,* 590 F.2d 1228 (2nd Cir.1979), the relevant factors examined were the dates of the purported agreements, the identity of each of the alleged conspirators, and the specific criminal acts to the commission of which the defendants were alleged to have agreed. The court

found that based on these factors the two indictments were not multiplicious on their face.

In closing it is fair to conclude that a defendant who waives all facts in effect accepts them. Such a man generally must proceed with the burden of the facts.

### One Conspiracy From Two

It is apparent from the above that the defendants depend on the similarity of the form of the contracts in question. Thus, they say that these contracts are the same; a part of the same conspiracy. They argue that as a result of their calling the two contracts one contract that they automatically assume this character. They neglect the positive facts which point to each contract having an individual character. They were entered at two separate times and in two separate places. In fact the roads involved are located at different places and are not connected. The fact that the two contracts are similar in form has no consequence. Lawyers are noted for utilizing a form. Therefore, the fact that the two contracts are similar does not suggest that they are identical. It could be said that the second contract was copied from an earlier existing contract. When the second contract was executed the company pursued and obtained another independent job. No amount of wishing can change this fact.

Part of the defendants' position is that the sentences of the defendants Ray C. Broce and Broce Construction Company, Inc., are in violation of the double jeopardy clause of the Fifth Amendment of the United States Constitution on the ground of multiplicity in that they are being punished twice for a single offense. There are so many features that demonstrate that these two indictments were based on individual transactions.

There are several reasons for this being two transactions. First, these transactions had different contracts. If they had wished to have a single contract they perhaps could have brought about a less damaging result by referring in that to the various provisions instead of writing a brand new contract. Surely these businessmen know that one does not write two contracts for one transaction.

Second, such contracts conceivably could be part of one transaction if they both pertained to the same highway. They do not. The two highways are in completely different geographical locations.

Third, several months passed between the completion of contract number one and the undertaking of contract number two. This chronological gap implies that there were two transactions.

Fourth, this also persuades that they were not thinking at the time of the various signings that this was just one transaction. This being the case if there had been an effort to keep it under one roof there would have been only one agreement for the two roads.

It appears that these two projects fell short of being one. The double aspect was clearly an after-thought which was brought about two years too late to be of service to these defendants. How could the defendants demand their money back after two years has passed? The district court, Judge O'Conner, reached the conclusion that these were two distinct transactions and thus the defendant was not punished twice. Finally, the defendants tried to cure the problem by saying that one conspiracy permeated the entire work of Broce Co. But a careful examination of the two contracts reveals that they clearly represent distinct transactions. The "conspiracy" came to life long after the creation of the contracts. Although it seemed to have been brought to the surface in an effort to establish the double jeopardy claim. But it fails.

### The Conclusion

The record reveals that the defendants waived any and all rights under the double jeopardy clause. This came about when the defendants agreed to voluntary pleas of guilty. It was not until Broce's release from prison that they came forward with their present claims. But even if their

rights under the double jeopardy clause were not waived, the guilty pleas admit the facts in the indictments, both of which plainly acknowledge two separate conspiracies. Not only that, the facts readily reveal that under no theory could their conduct be ruled to be part of a single larger conspiracy. The attempt by the defendants to put forth a single larger conspiracy fails miserably. The trial court saw through their efforts to restore a past which itself fails. The result that they seek does not emerge.

The argument is that Broce has continuously been in a conspiracy the object of which was to realize excessive gain at the expense of Kansas and United States taxpayers. The defendants here do not hesitate to acknowledge this. This demand seeks to undo the payments which the court assessed as punishment for their misdeeds.

To allow them to obtain this is contrary to law including not only laws of Congress, but also the United States Constitution.

In addition it would set a precedent which could allow courts to disregard the United States laws in favor of their own ideas. The judge in this case rejected these efforts and upheld the law. To accept the position of the majority would favor these defendants and would create a system which tolerates the undoing of pleas of guilty. This at least would weaken the system of law which was adopted in 1789. Besides the general developments here suggested, it would leave a system which criminals could manipulate according to their will and their money.

Finally, no laws or rules could justify a result which holds out a consequence which they here demand. More violations can be expected if the criminals can apply that which they wish rather than that which they agree to.

## APPENDIX

Count I of Indictment 1 consists of fifteen numbered paragraphs divided into seven sections designated by I through VII. Section I is headed "Definitions" and con-

sists of Paragraph 1 which is divided into three sub-paragraphs, (a), (b), (c). The sub-paragraphs define the terms "highway construction", "highway construction contract" and "federal-aid highways", respectively. Section II is entitled "defendants" and consists of Paragraphs 2 and 3. Paragraph 2 alleges that Ray C. Broce is President and Gerald R. Gumm is General Manager of Broce Construction Company. The paragraph further identifies that Broce Construction Company is a corporation organized under the laws of the State of Kansas which does business particularly at Dodge City, Kansas. Paragraph 3 states that any reference to an act of a corporation means that the corporation acted through its officers or agents, etc. while they were actively engaged in the management, etc. of a corporation.

Much of the remaining space is devoted to the similarity in wording of the various provisions in each indictment. It proves little if anything. It repeats and repeats more of the materials in the two indictments.

Section III is entitled "co-conspirators" and consists of Paragraph 4 only. This latter paragraph states that various persons and firms not made defendants participated as co-conspirators in the offense charged and performed acts and made statements in furtherance thereof.

Section IV is entitled "trade and commerce" and it consists of five paragraphs.

Paragraph 5 asserts that federal aid highways, including the highway which is the subject of the indictment, are part of a nationwide network of inter-connecting highways over which interstate commerce is conducted.

Paragraph 6 states that there exists under the Federal Aid Highway Act, 23 U.S. C.2d 101, *et seq.*, a cooperative effort on the part of states and the federal government, including the State of Kansas, for the development and construction of highways, including the highway which is the subject of this indictment.

Paragraph 7 alleges that the State of Kansas during the time period of the indictment sought sealed competitive bids from highway construction contractors.

Paragraph 8 states that Kansas requires that highway projects over $1,000 be bid competitively. Paragraph 9 explains that Kansas bidding regulations require a statement of non-collusion in it. Paragraph 10 states that materials travelling in interstate commerce were used in Kansas highway projects including the one which is the subject of the indictments. To say that the Kansas bidding regulations require a statement of non-collusion in each bid is superfluous inasmuch as there is nothing but collusion throughout all of these briefs. They have undertaken to set forth all of the contractual matters; but at the same time they allege that these were evidences of collusion. At the same time they back away from this conclusion any time a law violation comes into view. Unquestionably the appellants and Gerald R. Gumm and others unknown conspired to suppress and eliminate competition for the construction of Kansas Highway Project No. 23–60–R.S.1080(9) in violation of the Sherman Act (15 U.S.C. § 1).

Paragraph 12 states that the conspiracy was set forth in the agreement. It alleges that there was understanding and concert of action among conspirators. The substantial terms of a conspiracy were (a) to allocate the construction project named to Broce Construction Company; (b) to cement collusive, non-competitive and rigged bids to the State of Kansas in connection with the project. Paragraph 13 alleges that overt acts were committed. These included (a) discussing the submission of bids on the projects; (b) designating the successful low bidder on the project; (c) the submission of intentionally high bids by co-conspirators; (d) submitting bids containing false, fictitious and fraudulent statements and entries; and (e) discussing the submission of prospective bids on other projects let by the State of Kansas on April 25, 1978. (R.O.A. Vol. 2, pp. 139–140)

Section VI is labeled "effects" and it consists of Paragraph 14. This latter sets forth among other effects of the conspiracy: (a) that it caused the prices for the project to be maintained as artificial and non-competitive levels; (b) that it caused competition in the construction of the project to be eliminated; (c) that it caused the State of Kansas to be denied the right to receive competitive bids on the project; and (d) that it caused the State of Kansas and the United States to be denied the benefits of competition on the project. In other words, the showing is unmistaken inasmuch as it establishes a violation of the Sherman Act and admits it with candor. Thus the conspiracy was designed in order to avoid the law; the Sherman Act. The object was to set aside the Sherman Act in favor of a small group of contractors who do not compete. Their effort is to fix prices among the selected few. The United States Government sought to prosecute these participants and the litigation by the contractors simply ignores this effort.

Another part, Section VII, is entitled "jurisdiction and venue". It undertakes in Paragraph 15 to reveal that the conspiracy was formed and carried out within the District of Kansas during five years following the return of the indictment. (R.O.A. Vol. 2, p. 140)

Count II of Indictment No. 1 is not primarily involved in this appeal and accordingly, there is nothing to be gained by summarizing it.

Indictment No. 2 is organized with great care. It has seven sections designated by roman numerals. The section headings are identical to those in Indictment No. 1. That is as far as the similarity goes. The indictment consists of fourteen numbered paragraphs. Section I entitled "definitions" consists of Paragraph No. 1 which is divided into sub-paragraphs (a) and (b), which define the term "highway construction" and "highway construction contractor", respectively. (R.O.A. Vol. 1, p. 1) The definitions of those terms are identical to the definitions given in Section I of Indictment No. 1, the only difference in the two sections being that Indictment No. 2 fails to define the term "federal-aid highways."

Section II entitled "defendants" consists of Paragraphs 2 and 3 (R.O.A. Vol. 1, pp. 1–2). Paragraph 2 is identical to the same paragraph in Indictment No. 1 except that it contains no reference to Gerald R. Gumm. Paragraph 3 is exactly identical to Paragraph 3 of Indictment No. 1.

Section III is entitled "co-conspirators" and consists of Paragraph 4. (R.O.A. Vol. 1, p. 2) Section III is identical to Section III of Indictment No. 1.

### Trade and Commerce

Section IV which is entitled "trade and commerce" consists of Paragraphs 5 through 9. (R.O.A. Vol. 1, pp. 2–3) Paragraph 5 is identical to Section IV, Paragraph 5 of Indictment No. 1, except that it begins with the words "public highways", instead of the words "federal-aid highways". This feature does not lack truth. The term "federal-aid highways" is correct because federal aid was exactly what it was. Undoubtedly federal money was the important object in the entire project.

Paragraph 6 is identical to Section IV, Paragraph 7 of Indictment No. 1. Paragraph 7 is identical to Section IV, Paragraph 8 of Indictment No. 1. Paragraph 8 is identical to Section IV, Paragraph 9 of Indictment No. 1. Paragraph 9 is identical to Paragraph 10 of Indictment No. 1. The only major difference between Sections IV of the two indictments is that Indictment No. 1 contains a paragraph describing state and federal co-operation under the Federal Aid Highway Act (15 U.S.C. § 101, *et seq.*). *See* Paragraph 6 of Indictment No. 1.

Indictment No. 2 deals with a completely different area for the building of the highway and it uses various headings and discussions. Thus Section V of Indictment No. 2, entitled "offense charged" consists of Paragraphs 10 through 12 of the indictment. Paragraph 10 is identical to Paragraph 11 of Section V of Indictment No. 1 except for the project number. In Indictment No. 2 the project number is K.R.L. 29–2(26); the date of the bid letting, July 17, 1979. The description of the project as a "public highway project" rather than a "federal-aid highway project", and the date

of commencement of the conspiracy, in or about July, 1979. Paragraph 11 is identical to Paragraph 12 of Indictment No. 1 except for the project number and date of letting in subparagraph (a) and the reference to the project as a "public highway project", rather than a "federal-aid highway project."

Paragraph 12 of Indictment No. 2 is identical in charging overt acts in furtherance of a conspiracy in Paragraph 13 of Indictment No. 1. The exception is referring to the different project numbers, sub-paragraph (e) being the only exception. Indictment No. 2, sub-paragraph (e) alleges a discussion of the payment of consideration to another contractor and in Indictment No. 1, sub-paragraph (e) alleges the discussion of the submission of bids on other projects.

Section VI entitled "effects" consists of Paragraph 13. (R.O.A. Vol. 1, page 5) It has identity to Section VI of Indictment No. 1 except for the description of the project as a "public highway project" rather than a "federal-aid highway project", and there is the elimination of a reference to the United States in sub-paragraph (d).

Section VII is entitled "jurisdiction and venue" and consists of Paragraph 14 of the indictment. (R.O.A. Vol. 1, p. 6) Section VII of Indictment No. 2 is identical to Section VII of Indictment No. 1.